## Anshutz *et al.* versus Miller.

1. A devise was, "I bequeath to the said John P. Anshutz all my right and title to my income from said estate as long as he shall live, and after his death his widow is entitled to said income; after her death it shall be distributed to Annie M. Miller, daughter of John Miller. and should the wife of John Miller survive (Annie M. Miller) it shall go to her." At the date of the will the wife of Anshutz was alive. *Held*, that "his widow," referred to the wife at that time and not to *any* wife who might survive him.

2. Where an estate is given to a person described by relation either to the testator or other devisees, on a contingency which may or may not happen, and at the execution of the will there is a person to whom upon the happening of the contingency the description would apply, as a general rule such person is intended to be the devisee.

3. Anshutz and wife, Miller and wife and the daughter entered into an agreement to convey "a good, sufficient and marketable title." *Held*, that they could convey such title.

4. The possibility of the happening of a contingency on which any interest hostile to the rights of the devisees could arise was too remote to be entitled to recognition.

. February 25th 1876.    Before AGNEW, C. J., SHARSWOOD, GORDON, PAXSON and WOODWARD, JJ.

Error to the District Court of *Philadelphia:* Of January Term 1875, No. 90.

This was an action of covenant, brought February 21st 1874 by John P. Anshutz, Louisa M. Anshutz, his wife, Annie M. Miller, John Miller and Ann M. Miller, his wife, in her right against William H. Miller.

A case stated was filed in the cause, setting out as follows :—

"John E. Rorer died in 1870, seised of an undivided one-fourteenth part of certain coal lands, known as the Patterson tract, situate in Schuylkill county, which land he had inherited from his father. John E. Rorer, disposed of all his property, which consisted of realty and personalty, by his last will, which is as follows :—

[Anshutz *v.* Miller.]

" ' Philadelphia, December 11th 1869.

' This is to certify, this is my last will and testament, that I do most respectfully submit that the children of William, James or Albert Rorer, shall have no share or portion in my estate. And furthermore, I empower John P. Anshutz to settle my said estate, and I bequeath to the said John P. Anshutz, all my right and title to my income from said estate as long as he shall live, and after his death, his widow is entitled to said income ; after her death it shall be distributed to Annie M. Miller, daughter of John Miller, and should the wife of John Miller survive (Annie M. Miller), it shall go to her.                              JOHN E. RORER.'

"John P. Anshutz, Louisa M. Anshutz, his wife, Annie M. Miller, daughter of John Miller, and Ann M. Miller, the wife of John Miller, and mother of Annie M. Miller, which four persons are the only devisees and legatees named in the above will, and John Miller, the husband of Ann M. Miller, have entered into an agreement in writing, with the defendant, William H. Miller, dated the 13th day of February, A. D. 1874, by which they agree to convey William H. Miller, in fee simple, all of their undivided share in the one-fourteenth part of the said tract of coal lands, known as the Patterson tract, in Schuylkill county, in which they have any title or interest whatsoever, derived from and under the will of John E. Rorer, for the price of $1284.37, and William H. Miller agreed to pay for the lands above mentioned the said sum of $1284.37, upon receiving a good, marketable and sufficient title in fee simple to the same. John P. Anshutz, Louisa M. Anshutz, his wife ; Annie M. Miller, the daughter, and Ann M. Miller, the wife of John Miller, devisees and legatees as aforesaid, in fulfilment of their agreement, have offered to execute and deliver to William H. Miller, the defendant, a fee simple deed, in the usual form, for the premises, John Miller joining in the deed, but the defendant has refused to receive the same in execution of the agreement, alleging that the plaintiffs cannot convey under the will a good and sufficient marketable title, in fee simple, to the lands. .

" If the court shall be of opinion that under the will of John E. Rorer, the plaintiffs are seised and possessed of such estates in and to the lands, that they can together convey and assure to the purchaser a good, marketable and sufficient title, in fee simple, to the same, then judgment is to be entered for the plaintiffs for the sum of $1284.37 ; but if the court shall be of a contrary opinion, then judgment is to be entered for the defendant, with leave to either party to take a writ of error to the judgment of the court.

" The testator had four brothers and four sisters, of whom one brother (William Rorer) and three sisters (Mrs. Ann M. Miller is a sister) survived him, and are now alive, all of them having

[Anshutz *v.* Miller.]

children now living. The remaining brothers and sisters were dead at the date of the testator's will. Two of them—the brothers Albert and James—named in the will, left children now living. The said Louisa M. Anshutz, the wife of John P. Anshutz, is the niece of John E. Rorer, the testator, and the daughter of Mrs. Ann M. Miller, the testator's sister."

The District Court entered judgment for the defendant on the case stated.

The plaintiffs removed the record to the Supreme Court by writ of error, and assigned for error, so entering judgment.

*G. W. Biddle* (with whom was *A. S. Biddle*), for plaintiffs in error.—A bequest of income is a gift of that from which the income is derived: Van Rensselaer *v.* Dunkin, 12 Harris 253. To determine the object of the testator's bounty, the court will inquire into his circumstances, and those of his family and affairs: Wigram on Wills 51 ; Blackwell *v.* Bull, 1 Keen 187 ; Hoff's Appeal, 4 Casey 58; Rewalt *v.* Ulrich, 11 Harris 388 ; 2 Jarman on Wills 762 ; 2 Powell on Devises 6 ; Wilkinson *v.* Adam, 1 Ves. & B. 422. Devise to the wife of testator, means his wife at the date of the will: Garratt *v.* Niblack, 1 Russ. & Myl. 629; Bryan's Trust, 8 Eng. L. & Eq. 253; Boreham *v.* Bignall, 8 Hare 3; Franks *v.* Brooker, 27 Beavan 635.

*S. S. Hollingsworth*, for defendant in error.—The reporter received no paper-book from defendant in error.

Mr. Justice WOODWARD delivered the opinion of the court, May 8th 1876.

On the 13th of February 1874, the plaintiffs sold by articles of agreement to William H. Miller, the defendant, one undivided fourteenth part of a tract of land in the county of Schuylkill. The agreement stipulated for a conveyance by the vendors to the purchasers of "a good, sufficient and marketable title." The plaintiffs offered to execute and deliver a deed in fee simple in the usual form. On the allegation that the title was defective, the defendant refused to receive such a deed in execution of the contract. The claim of the plaintiffs to the property rests on the last will and testament of John E. Rorer, which was executed on the 11th of December 1869, in these words : "This is to certify, this is my last will and testament, that I do most respectfully submit that the children of William, James or Albert Rorer shall have no share or portion in my estate. And furthermore, I empower John P. Anshutz to settle my said estate; and I bequeath to the said John P. Anshutz all my right and title to any income from said estate as long as he shall live, and after his death his widow is entitled to said income; after her death it shall be distributed to Annie M.

[Anshutz *v.* Miller.]

Miller, daughter of John Miller, and should the wife of John Miller survive (Annie M. Miller) it shall go to her." The wife of John P. Anshutz, Louisa M. Anshutz, is the daughter of Annie M. Miller, the testator's sister. The objection to the title is founded on the provision in the will that the estate shall go to the widow of Anshutz at his death. It is contended that the provision creates a contingent remainder in favor of the person, now unascertained, who shall happen to be his wife when Anshutz dies. This view was adopted by the District Court, and judgment was entered on the case stated for the defendant.

All the successive devisees, except the widow of John P. Anshutz, were indicated with individual distinctness. There was no attempt at classification, and no direction, as to them, that the gift should be dependent on any relations which they bore to the testator or to each other. Can the intention be gathered from the will that the remainder to the widow was to be dependent on the relation which any wife of Anshutz should bear to him? Mrs. Anshutz was in full life when the will was made. She was the testator's niece. Surviving her husband, she would be his widow. Could the testator possibly have had in view any other wife of the husband of his niece, for whom it was his purpose to provide? Where an estate is given to a person described by relation either to the testator or to other devisees, on a contingency that may or may not happen, and a person is in being at the time of the execution of the will, to whom, on the happening of the contingency, the description would apply, it is a safe general rule to hold such person as intended to be the devisee. In Bryan's Trust, 8 Eng. L. & E. Rep. 253, a testatrix gave the interest of certain money in the funds to her daughter for life, and after her decease the capital to be divided between the husbands of her daughters and her son, or such of them as might be living at the death of her daughter Mary. One of the daughters married a second husband after the death of the testatrix, who was living at the death of the tenant for life. It was held that the testatrix meant to designate the particular husbands living at the time she made her will, and that the second husband was not entitled to a share of the trust fund. In entering judgment the Vice Chancellor said : " The question here is, whether the testatrix meant a class of persons or certain individuals. She has used no expression to indicate which she intended. She says, ' to be divided between the husbands of my daughters and my son, or such of them as may be living at the death of my daughter Mary.' Now it appears that the testatrix had before mentioned her son John, and that she had but one son. Therefore, I think it clear, that in using the expression 'my son,' she meant to designate her son John, and not any son she might have, or who might be living at the time of her decease. Now the husbands of the daughters, whom the testatrix knew, as well as her

[Anshutz *v.* Miller.]

son John, would naturally be objects of her bounty ; and as she designates her son as an individual and not a class, I think the same construction ought to apply throughout the clause ; that is, that all the husbands mentioned by the expression, 'the husbands of my daughters,' meant the individuals she knew as the then husbands. I am therefore of opinion that the petitioner, the only husband of those living at the death of the testatrix, who survived Mary Dudley, the tenant for life, is entitled to the whole fund." Throughout this will it was the manifest intention of the testator to provide for individuals within the circle of his sister's family. No doubt is entertained that the title which the plaintiff offered to convey was "good and sufficient," under the terms of the agreement.

Was the title marketable? It was said in Swayne *v.* Lyon, 17 P. F. Smith 436, that "it has been well and wisely settled that under a contract for the sale of real estate, the vendee has the right not merely to have conveyed to him a good but indubitable title. Only such a title is deemed marketable, for otherwise the purchaser may be buying a lawsuit, which will be a very serious loss to him, both of time and money, even if he ultimately succeeds." Is there anything in the circumstances of this case to create rational apprehension of danger from litigation? Three distinct contingencies must arise before any interest hostile to the rights of the plaintiffs can be asserted. The first of these is the death of the present wife of Anshutz; the second is his subsequent marriage; and the third is his own death in the lifetime of his last wife. The possibility of disturbance is too remote to be entitled to recognition. "It is requisite that the possibility upon which a remainder is to depend should be a common possibility and *potentia propinqua*, as death, or death without issue, or coverture, or the like. Therefore a remainder to a corporation, which is not in being at the time of the limitation, is void, although it be erected during the particular estate. So, if there be a lease for life, remainder to the heirs of J. S., though this remainder be good because by common possibility J. S. may die during the particular estate, yet if there be no such person as J. S. at the time of the limitation, notwithstanding such a person should afterwards be born, and die during the life of the tenant for life, his heir shall not take by virtue of such limitation, because the possibility on which it is to take effect is too remote, for it amounts to the concurrence of two several contingencies, not independent and collateral, but the one requiring the previous existence of the other, and yet not necesserily arising out of it. This is called a possibility upon a possibility, which Lord Coke tells us is never admitted by intendment of law:" Fearne on Remainders 250, 251, and the cases there collected. While it was held by Judge King (in Dalzell *v.* Crawford, 2 P. L. J. 155), that "a market-

[Anshutz v. Miller.]

able title in equity is one in which there is no doubt involved, either as to matter of law or fact, and such a title only will a purchaser be compelled to accept," he held also that "the doubts which will operate on a court of equity are not doubts made up for the occasion, nor based on captious, frivolous and astute niceties, but such as produce real, bonâ fide hesitation in the mind of the chancellor." He added: "The cases in which courts of equity have refused their aid to a vendor, where they have considered his title good, though disputable, are cases of real and serious difficulty. The doubt, to have this effect, must be what Lord Eldon, in Stapylton v. Scott, 11 Ves. 272, calls a considerable or rational doubt." It is believed that no serious question, as to matter of fact or matter of law, can arise in a case like this where the objection to the title rests on the effect of the happening of contingencies extended to the third remove.

Judgment reversed, and judgment for the plaintiffs in accordance with the stipulations of the case stated.