## Lippincott's Estate.

Argued December 8, 1938.   Before KEPHART, C. J.,
SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*William N. Trinkle,* with him *Frank F. Truscott,* of
*Truscott, Trinkle & Wright,* for appellant.

*Boyd Lee Spahr,* of *Ballard, Spahr, Andrews & Inger-
soll,* and *Arthur E. Pettit,* of *Burlingame, Nourse & Pet-
tit,* with them *Knox Henderson,* for appellee.

*R. M. Remick*, of *Saul, Ewing, Remick & Saul*, for petitioner, intervenor.

OPINION BY MR. JUSTICE STERN, January 9, 1939:

Testator, J. Dundas Lippincott, executed a holographic will in 1904. He was then sixty-four years old, and died in 1905. He had been twice married, but had no issue by either wife. His second wife, Isabel Armstrong Lippincott, was, at the date of the will, thirty-seven years of age. The testator had no brothers and only one sister, Anna, who married William Wurts-Dundas. They had one child, Ralph, and he in turn had an only child, Muriel.

Testator devised and bequeathed his residuary estate to the Pennsylvania Company for Insurances on Lives and Granting Annuities, to be held by it in trust, "the interest of which to be divided every six months between my wife Isabel Armstrong Lippincott and my Nephew Ralph Wurts-Dundas, share and share alike. Should either die before the other without descendants alive at his or her decease, this share shall go to the one surviving. On the death of my wife Isabel Armstrong Lippincott I give and bequeath the residue and remainder of my estate to my Nephew Ralph Wurts-Dundas for life with remainder to his descendants per stirpe [sic] upon the principal [sic] of representation. Should he leave no descendants surviving him this sum shall be evenly divided" among certain named hospitals.

These testamentary provisions seem clear in their general aspects. Testator's nephew was his heir at law and next of kin, but, naturally wishing also to provide for his wife, he divided the income from the trust estate equally between her and his nephew; upon her death the nephew was to have a life estate and the remainder to go to the nephew's descendants. It occurred to testator that, since either the wife would predecease the nephew or vice versa, some provision would have to be made for the disposition of the income of the one first dying until the

time when the remainder interests would come into enjoyment;—hence the clause that if either died before the other without descendants alive at his or her decease the share of the one who died should go to the survivor.

Unfortunately testator overlooked the doubt which would arise in the interpretation of his will because of the fact that he did not make provision for this interim income in case the wife or the nephew should die *leaving* descendants. The nephew, Ralph Wurts-Dundas, died in 1921, his daughter Muriel surviving. The question then presented itself as to the disposition to be made thereafter of the income which he had been receiving. Judge GEST, in the Orphans' Court of Philadelphia, decided *(Lippincott's Estate,* 2 D. & C. 1) that there was an implied gift of this income to the nephew's descendants, that is, to Muriel. That decision was affirmed by this court in *Lippincott's Estate,* 276 Pa. 283, Mr. Justice SIMPSON saying that the will was to be read as though it had expressly provided that if either the wife or the nephew should die before the other *with* descendants alive at his or her decease, such descendants should take the income formerly paid to the one so dying, and on the death of the wife *leaving no descendants* the residue and remainder of the estate was to go to the nephew for life with remainder to his descendants. So far as this construction of the will applied to the contingency which had actually happened, it was, of course, a binding decision, and clearly a correct one; but so far as it purported to deal with the contingency which would have occurred had the wife predeceased the nephew, it was merely dictum, and it is wholly upon the fallacious interpretation which appellant places upon that dictum that she now bases her appeal in regard to the distribution of the principal of the trust.

Some years after testator's death his widow married Archibald Barklie. She died in 1937 without descendants, leaving her residuary estate to her husband; he died a few weeks later, also without descendants, and

bequeathing his residuary estate to his sister, Helen B. Darcy, the present appellant. She, claiming by right of her brother, and through him in turn of her sister-in-law, assumes that, according to the previous opinion of this court, if Mrs. Lippincott had predeceased the testator's nephew and had left descendants surviving, the income theretofore payable to her would thereafter have been payable to such descendants *for their lives,* and the remainder interests in the nephew and his descendants would not have vested until the death of such surviving descendants of Mrs. Lippincott. Upon this premise she asserts that the remainder interests to the nephew and his descendants are invalid because they violate the rule against perpetuities *(Rhodes' Estate,* 147 Pa. 227, 229, 230; *Gageby's Estate,* 293 Pa. 109, 112; *Feeney's Estate,* 293 Pa. 273, 284; *Scott's Estate,* 301 Pa. 509, 517). Therefore, she claims, testator died intestate as to the principal of the trust, and it should be divided between herself and Muriel H. Wurts-Dundas (now, by marriage, Muriel H. Wurts-Dundas Boone), as the ones now entitled to receive it because of such intestacy. The orphans' court rejected this claim and awarded the principal of the trust (of a present value in excess of four millions of dollars) to Mrs. Boone.

Appellee has moved to quash the present appeal on the ground that appellant's interest, if any, in testator's estate is not direct or immediate, and that the only proper appellant would be the executor of the estate of Isabel A. Barklie. This contention rests upon a sound general principle. Since, however, the estates of Isabel A. Barklie and Archibald Barklie have been finally adjudicated, and the court has ordered that their respective residuary estates be paid to appellant, the motion to quash will not be granted.

Appellant has misconceived the import of the dictum contained in the previous opinion of the court. It may be said in passing—although of no practical moment—that it is doubtful whether that dictum was warranted.

What the case decided was that, upon the death of testator's nephew leaving a daughter surviving, the income previously payable to him should thereafter be payable to her, but it does not necessarily follow that, had the reverse contingency happened and Mrs. Lippincott had predeceased the nephew and left descendants, the share of the income which she had enjoyed would have gone thereafter to such descendants. It is more likely that testator intended that the income payable to his nephew should continue on to the nephew's child than that he intended the income payable to his widow should continue on for the benefit of any children she might have by some subsequent marriage. Be this as it may, there is a categorical bequest of the remainder of the estate to the nephew for life and to his descendants, not upon the death of the widow *without descendants,* but upon her death irrespective of that or any other qualification. Judge GEST strongly intimated that he did not believe the two situations were identical, but said it was unnecessary to decide the question.

Even, however, if the dictum relied upon by appellant was correct, it does not admit of the implications which appellant seeks to attribute to it. It contains no intimation or suggestion that if the widow had died before the nephew leaving descendants surviving, her share of the income would have gone to such descendants *for their lives.* It seems clear beyond peradventure that even if such descendants would have been entitled to the widow's share of the income they would have enjoyed it only during the remaining lifetime of the nephew, and until, at his death, his descendants should acquire the principal, just as Muriel Wurts-Dundas' enjoyment of her father's share continued only until the death of the widow. The right of the descendants of either the widow or the nephew to receive any income existed only during the stop-gap period between the death of the one and that of the other; in other words, their estates in the income, implied under the will, were estates pur autre vie.

Upon the death of both the widow and the nephew, whether the widow left descendants or not, the nephew's descendants were entitled to the principal, and therefore no question of the rule against perpetuities is involved.

It may be pointed out that even if appellant's position were otherwise tenable, it is vulnerable by reason of the fact that the rule against perpetuities applies only to contingent, not to vested, estates: *Rhodes' Estate,* 147 Pa. 227; *Edwards's Estate,* 255 Pa. 358, 365; *Lilley's Estate,* 272 Pa. 143, 150; *Gageby's Estate,* 293 Pa. 109, 113; *Friday's Estate,* 313 Pa. 328, 331. Moreover, where a testator provides that a remainder is to vest upon the happening of either of alternative contingencies, one of which violates the rule against perpetuities while the other does not, the bequest will be held valid if the contingency happens which does not violate the rule. *(Whitman's Estate,* 248 Pa. 285, 289, and cases there cited; Gray on Perpetuities, secs. 341-353.) However, it is not necessary to consider the applicability of these principles to the present case.

The decree of the court below is affirmed; costs to be paid by appellant.