## Dravo Estate (No. 2)

*William F. Knox* and *Davis C. Burroughs, Jr.*, for trustees.

*James H. Gray* and *Richard B. Tucker, Jr.*, for claimants.

BOYLE, P. J., December 6, 1957. — The question which is before the court for determination in the audits of three separate accounts in two inter vivos trusts and a testamentary trust containing identical trust provisions for the benefit of Donald Pettit, his widow and issue, is whether the said provision violates the common law rule against perpetuities, the three trusts having been created prior to January 1, 1948, the effective date of the Estates Act of April 24, 1947, P. L. 100.

The two irrevocable inter vivos trusts were created by separate trust instruments executed by Francis R. Dravo and his wife, Fanny M. Dravo, on January 17, 1931. The testamentary trust was created by the will of Francis R. Dravo which was signed by testator on February 20, 1933, and became effective upon his death on February 25, 1934. Fanny M. Dravo died on December 11, 1953. These settlors and testator had no children.

The trust instruments and the will referred to contain trust provisions for reciprocal life estates for settlors, for certain employes of the Dravo Corporation, for a number of charities and for certain of the relatives of settlors. Among these relatives was a nephew, Donald Pettit. As to him the two trust inter vivos instruments and the will contain provisions in identical language giving him the net income from varying shares in each trust for his life and providing that ". . . upon his death the income from said . . . share shall be paid to his widow during her life. At the death of Donald Pettit and his wife, the principal of said . . . share shall be paid in equal shares to any issue of his who are then living, per stirpes. If the said Donald Pettit and his wife should die without issue surviving them, the principal of the said share shall be paid to St. Stephen's Church, Sewickley, Pennsylvania."

Donald Pettit, the nephew, and his first wife, Jane D. Pettit, were married on June 24, 1922. A son, William D. Pettit, now living, was born of this marriage on May 23, 1923. The child William was seven years of age when the two inter vivos trusts were created and was 10 years of age at the death of Francis R. Dravo. The marriage of Donald and Jane Pettit was attended by serious difficulties from the beginning. It is conceded that settlors and testator endeavored to assist their nephew Donald by providing employment for him and it is acknowledged that they had an affectionate regard for his wife Jane and the child William.

The marriage of Donald Pettit and Jane D. Pettit was dissolved by a decree in divorce on December 31, 1934. In 1937 Donald Pettit married Elizabeth Clark who thus became his second wife. She had been born on January 14, 1899, during the lifetimes of Francis R. Dravo and Fanny M. Dravo, the creators of the three trusts involved in the case at bar.

No children were born of the second marriage of Donald Pettit.

Elizabeth Clark, the second wife of Donald Pettit, died on June 10, 1956.

Donald Pettit, the first life tenant under the three trusts, died on March 13, 1957. He is survived by his first wife, Jane D. Pettit, and his son, William D. Pettit, born of his marriage with Jane.

Upon the death of Donald Pettit the trustees in the three trusts filed the accounts which are now on audit. In each instance the same questions of distribution are presented:

Under the language of the trust instruments is Jane, the surviving first wife of Donald, entitled to receive the income from the trusts for her life? Is she disqualified as a life tenant by reason of the 1934 divorce? What are the rights of the son, William D. Pettit, at this time? Does he have a present vested interest in the trust estate by reason of his father's death? Is the interest of William D. Pettit a contingent one under the language of the trust instruments? Do the respective provisions for William D. Pettit violate the common law rule against perpetuities as the executors of the will of Fanny M. Dravo contend? What is the intention of settlors?

The rights of Jane, the surviving first wife, and her son, William D. Pettit, are interrelated and depend upon the construction of the gifts to the "widow" or "wife" of Donald. If an absolute gift of a life estate was made to the person who met the description of "wife" at the execution of the instruments (Jane D. Pettit), changed circumstances such as the subsequent divorce would not affect the gift to her. Thus William's contingent gift, which would vest at the end of Jane's life estate, could not violate the rule against perpetuities, for it would vest at the death of a life in being at

the effective date of the instruments: Lippincott's Estate, 333 Pa. 48, 54 (1939) ; Solms' Estate, 253 Pa. 293, 296 (1916) ; Anshutz v. Miller, 81 Pa. 212, 215 (1876) ; Harrigan Estate, 72 D. & C. 441, 442 (1950) ; Batchelor Estate, 67 D. & C. 310, 318 (1949 Hunter, J.) ; Disston's Estate, 46 D. & C. 496, 498 (1942), affirmed on other grounds, 349 Pa. 129; Sharpe's Estate, 15 W. N. C. 419, 420 (1884 wife named) ; 1 Simes and Smith, The Law of Future Interests, §153, pp. 185-86.

If, however, the word "widow" was used not to identify Jane but as a condition to the gift, restricting it to Donald's wife alive at his death, then Jane could not take the contingent life estate, for she is not Donald's widow because of the divorce. In this event, William could claim nothing because his contingent gift, vesting at the death of the surviving widow (a person possibly unborn at the creation of the trusts), might vest beyond the period of the common law rule against perpetuities: * Buzby Estate, 386 Pa. 1, 9-10 (1956) ; Anshutz v. Miller, supra, 215; Disston's Estate, supra, 498; Leach, Perpetuities in a Nutshell, 51 Harv. Law R. 638, 639 and 644 (1938) ; 1 Simes and Smith, supra, §153, pp. 185-6; 3 Simes and Smith, supra, §1228, p. 119; Gray, The Rule Against Perpetuities (4th Ed.), §214, p. 208.

The first question to be resolved is whether the words "widow" and "wife" describe Jane D. Pettit, a person in existence when the instruments were executed, or whether the words condition the definition of the person to take the second life estate.

It is a general rule of law that where a gift is made to a person described by relationship to another, even on a contingency that may not happen (to the widow of A), and where a person existing at the execution

---

* The Estates Act of April 24, 1947, P. L. 100, does not apply to this case. See section 21.

of the instrument meets the description or may fulfill the contingency, such person is intended as the beneficiary: Solms' Estate, supra, 296, 298; Anshutz v. Miller, supra, 215; 57 Am. Jur. §§1385 and 1387, pp. 922 and 923; 95 C. J. S. §665, p. 974. Thus "widow" would be construed as "wife" and the ordinary rule of identification of beneficiaries would apply that they are determined as of the execution of the instrument: Solms' Estate, supra, 296; Anshutz v. Miller, supra, 215; Darrow Estate, 164 Pa. Superior Ct. 25, 30 (1949); Harrigan Estate, supra, 441; Batchelor Estate, supra, 318; Breinig Estate, 18 Lehigh 305, 307 (1939).

However, the rule is not inflexible; "widow" does not always mean the wife in existence at the execution of the instrument: Buzby Estate, supra, 7. The cases using language of a general rule of construction have not relied upon such rule but rather on the creator's intent, the polestar in the interpretation of instruments: Buzby Estate, supra, 5-7; Leffmann Trust, 378 Pa. 128, 132 (1954); Earle Estate, 369 Pa. 52, 55-56 (1951); Newlin Estate, 367 Pa. 527, 529 (1951); Wolters Estate, 359 Pa. 520, 525 (1948); Blish Trust, 350 Pa. 311, 316 (1944); Solms' Estate, supra, 297; Anshutz v. Miller, supra, 215; Harrigan Estate, supra, 442; 1 Simes and Smith, supra, §153 pp. 184-5.

When the language of the trust instruments in the cases at bar is examined, we find, after the initial gift of income to Donald Pettit for life, a further gift of income to his "widow" during her life, and, at the death of Donald and his "wife", there is a gift of principal to any issue of "his" "then living". These words standing alone do not clearly individuate the wife as Jane and would tend to limit the remainder to Donald's issue by any wife ("issue of his"). But

the instruments must each be considered in whole, not in part, and in the light of the surrounding circumstances to give effect to the creators' general purpose: Earle Estate, supra, 155-6; Newlin Estate, supra, 529; Wolters Estate, supra, 525; Sippy v. Colter, 347 Pa. 1, 4 (1943). The court must consider subsequent language in the instruments as well as the surrounding circumstances: Solms' Estate, supra, 298; Batchelor Estate, supra, 318; Breinig Estate, supra, 307.

The substitutionary gift to St. Stephen's Church, which follows the initial gift, provides:

"If . . . Donald Pettit and his wife should die without issue surviving them, the principal . . . shall be paid to St. Stephen's Church, Sewickley, Pennsylvania."

This may be read with the prior sentence in different ways. The phrase "issue of his" used in the first gift of principal must be interpolated into the second sentence. One construction would have St. Stephen's Church take if Donald and his wife died without any of his issue surviving them regardless of who was the mother of the issue. Both sentences then would make the remainder in Donald's issue with a gift over on the failure of such issue.

A more correct interpretation of the words, as read in natural sequence, would have the church take only if Donald and his wife die unsurvived by common issue. "If . . . Donald Pettit and his wife should die without issue surviving them" suggests common issue rather than his alone because the life tenants are treated as a married couple. The "his" of the prior clause would eliminate issue of the wife born to another husband. It would strain the language to separate the two sentences and say there was a remainder in Donald's issue but a gift over only on failure of common issue. Reading both sentences in a natural, reasonable manner, we find that the creators contem-

plated a remainder in Donald's issue by his then wife with a gift over to the church in the event such issue failed to survive them.

The words "Donald Pettit and his wife," treat them as a couple and strongly suggest that a specific wife was in the creators' minds. It would be contrary to experience if the Dravos intended the common issue of Donald and whatever wife who survived him to take the remainder, for then William might be excluded as being issue by the first but not by the surviving wife. William was not only a person in being at the execution of the instruments but he was a relative of settlors and was treated with affection and consideration by them both before and after the execution of the instruments. Settlors would not have intended to cut William off on the mere chance that his parents might not remain married. Such a possibility was known to settlors, for the Pettits had experienced serious marital diffculties as early as 1926. The court finds that in their scheme of gifts to the "widow", "wife" and "issue", the Dravos had in mind the existing wife of Donald, Jane Pettit, and the common issue of Jane and Donald, William.

We recognize that Donald's issue by a second wife would be excluded under this interpretation, but to include them we must interpret "issue of his" as meaning issue by any wife or of the surviving wife, and in such event no issue could take at all, for their remainder might follow a life estate of a widow unborn at the effective date of the instruments.

The court holds that the creators intended to give Jane Pettit, as an individual, a life estate under this trust and that her subsequent divorce did not revoke her interest: Harrigan Estate, supra, 442-3; Sharpe's Estate, supra, 420.

The court also holds that William D. Pettit has a lawful interest in the trust. Although he takes under

the contingent remainder given to the issue living at the death of both life tenants, his interest is not barred by the rule against perpetuities: Bald Estate, 385 Pa. 176, 180 (1956) ; Bomberger Estate, 347 Pa. 465, 467-8 (1943) ; Warne's Estate, 302 Pa. 386, 391 (1931) ; Dailey's Estate, 268 Pa. 379, 381 (1920) ; Sternbergh's Estate, 250 Pa. 167, 170 (1915) ; Green's Estate, 227 Pa. 188, 190 (1910) ; Roney's Estate, 227 Pa. 127, 129 (1910) ; Wiltbank's Estate, 47 D. & C. 209, 210, 212-214 (1942) ; 1 Simes and Smith, supra, §153, §165, pp. 171 and 206.

The common law rule against perpetuities applies to contingent or executory interests but makes unlawful only those interests which at the effective date of the instrument might vest beyond the period of some life then in being and 21 years: Newlin Estate, supra, 531; Lippincott's Estate, supra, 54; Lockhart's Estate, 306 Pa. 394, 400 (1932) ; Johnston's Estate, 185 Pa. 179, 183-5 (1898). Here, the remainder in William, even though contingent, would not violate the rule since it will vest, if at all, at the death of Jane Pettit, a life in being at the effective date of all instruments: Bilyeu's Estate, 346 Pa. 134, 137 (1943). If William survives his mother, his interest will be irrevocably vested.

The several instruments creating trusts for Donald Pettit under the two deeds of trust executed by Francis R. Dravo and Fanny M. Dravo, respectively, on January 17, 1931, and the trust for Donald Pettit under the will of Francis R. Dravo, deceased, dated February 20, 1933, do not violate the common law rule against perpetuities.

The balances for distribution in the three accounts now before the court will be distributed to the trustee in each case to be held and administered in accordance with this opinion.