claim should have been treated as one under the South Dakota judgment proved, so far as necessary, by the New York judgment.

But the award of alimony was in the form of a gross sum for the life of the wife. Williams' liability for her support ceased with his death in 1904. Beach v. Beach, 29 Hun, 181. And, so far as the alimony awarded was intended as a provision for her support subsequent to that time, it may be that it is not enforceable. We have not before us the South Dakota statutes, and are not familiar with the practice of awarding alimony in a gross sum. But the question is not a practical one in this case, for the reason that the total amount of the Williams estate for distribution is so small that the amount payable to the claimant, in case her claim is allowed, will apparently not exceed the pro rata share of the alimony awarded to her by the South Dakota decree for the time which elapsed before Mr. Williams' death.

The decree of the surrogate, so far as appealed from, should be reversed, with costs to the appellant payable out of the estate, and a new trial ordered in the Surrogate's Court of Monroe county. All concur, except KRUSE and ROBSON, JJ., who dissent.

---

### In re HARRIS.

(Supreme Court, Appellate Division, First Department. July 11, 1912.)

WILLS (§ 496*)—CONSTRUCTION—"WIFE."

    Under a will providing that at the death of testator's son his estate should belong to his son's "wife and children then living, in equal shares," the second wife of the son was entitled to a share of the estate as the "wife" referred to in the will, though the former wife was living at the death of testator, and died thereafter.

    [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1065, 1066; Dec. Dig. § 496.*

    For other definitions, see Words and Phrases, vol. 8, pp. 7459, 7460.]

    Ingraham, P. J., dissenting.

Appeal from Surrogate's Court, New York County.

Judicial settlement of the account of William H. Harris, trustee. From a final decree of the Surrogate's Court settling account, Florence M. Morton appeals. Modified and affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

A. Welles Stump, of New York City, for appellant.
Paul M. Pelletreau, of New York City, for respondent.

SCOTT, J. There is but a single question of law involved in this appeal, and there are no disputed questions of fact.

Thomas Morton, who died October 1, 1886, left a last will and testament dated August 18, 1886, and which was admitted to probate October 12, 1886. By this will he gave to his executors certain property in trust to be held by them during the lifetime of his son Thomas

---

S. Morton. The property consisted of certain real estate in the city of New York, and the machinery, tools, patents, and other articles connected with or used in the testator's business, and the good will of the business and the right to carry on the same. At the death of the son said property was disposed of as follows:

"And, at the decease of my said son (or sooner if said trustees, the survivors or survivor of them shall find and determine that the continuation of the said business shall not be profitable) I direct, authorize and empower them to sell and convey the said premises Nos. 63 and 65 Elizabeth street, New York, either in their discretion at public or private sale, also the aforesaid property, patents, machinery, stock and articles connected therewith. And I direct that said trustees, the survivors or survivor of them shall then invest the proceeds of such sales on safe security; and pay over the interest thereof as soon as received, to my said son Thomas S. Morton, for and during his natural life; and, at his decease, the principal of said proceeds shall belong to his wife and children then living in equal shares to whom I do hereby give and bequeath the same. If any child of his shall die before his decease, leaving issue, such issue shall be entitled to the share its parent would have if living."

At the time of the death of Thomas Morton, and at the time his will was probated, the son, Thomas S. Morton, was married to one Mary Franklin Morton, by whom he had children. She afterwards died, and Thomas S. Morton married one Florence M. Morton, who survived him, and who now makes claim, under the will of Thomas Morton, to one-fifth of the aforesaid property, there being now surviving only four children of Thomas S. Morton and no children of any deceased child. Thomas S. Morton died June 6, 1910, leaving him surviving his widow, the said Florence M. Morton, and the four children above referred to.

The question presented is whether said Florence M. Morton answers the description of "his widow * * * then living" (referring to the date of the death of Thomas S. Morton) as those words are used in the clause quoted above from the will of Thomas Morton. Both parties to the controversy refer to Meeker v. Draffen, 201 N. Y. 205, 94 N. E. 626, 33 L. R. A. (N. S.) 816, Ann. Cas. 1912A, 930. In that case the devise was to the "widow" of the testator's son, and it was held that it went to the person who became a widow by reason of his death, although not she but another was his wife when the will was admitted to probate. The court was of the opinion that the will indicated that:

"The testator intended to provide for the widow of Charles (his son) whoever she might be, simply because she was his widow, and being deprived of his support would need something to live on."

The same reasoning would seem to be applicable to the will now under consideration, for, although Thomas Morton devised a share of his estate to his son's "wife," the terms of the devise were such that the devisee would necessarily be his son's "widow" when the devise to her became effective, for the son's "wife" at his death became his "widow" when he died. If Thomas Morton had used the word "widow," he would have accurately described the same person, and the case of Meeker v. Draffen, supra, would clearly have been applicable. We are of opinion that the testator in the present case was inspired

by the same consideration which influenced the testator in the Meeker Case, and that the reasoning of that case applies to the present. We are not unmindful of the fact pointed out by the Court of Appeals in the Meeker Case that the word "widow" is often given a broader application than is given to the word "wife," but, after all, the intention of the testator, if it can be ascertained, is the true test to be applied to the construction of a will, and mere differences in the use of words are by no means controlling. Van Brunt v. Van Brunt, 111 N. Y. 178, 19 N. E. 60, would seem, on a casual reading, to require a different construction of the will under consideration. In that case the testatrix gave her residuary estate to trustees for the respective lives of her children, and continued the trust after the death of each child for the benefit "of their respective wives or husbands, during their lives or until they remarry." It was held that the "wives or husbands" thus provided for meant the wives or husbands at the time of the death of testatrix, and did not include wives or husbands who became such after her death. There were two considerations which seem to have had great weight with the court. One was that in another clause of the will the testatrix used the word "widow" when she clearly meant to designate any wife of one of her sons, whether married to him before or after the death of the testatrix, thus indicating a differentiation in her mind between the words "wife" and "widow." The other reason, and perhaps the more important one, was that to construe the word "wife" as meaning any wife surviving a child would have resulted in the destruction of a trust which was clearly one of the most important features of the will.

In Davis v. Kerr, 3 App. Div. 322, 38 N. Y. Supp. 387, although the gift over was to the "widow" of a son, the court declined to construe the word as meaning a wife whom the son married after the death of the testator because that would have resulted in destroying a trust under the rule laid down in Shettler v. Smith, 41 N. Y. 328. On the other hand, in Re Lyne's Trust, Law Rep. 8 Eq. Cas. 65, the Vice Chancellor was called upon to construe a will much resembling the present wherein the testator created a trust for the benefit of a son, and directed that at his death the trust fund should be divided between the wife of said son (if she should happen to survive him), and all and every of his children. It was held that the bequest was to the surviving wife and children as a class the composition of which could not be determined until the death of the life tenant, and that it was intended to include in that class any wife, whenever married, and any children, whenever born, who might survive the son. To the same effect is Cogan v. McCabe, 23 Misc. Rep. 739, 52 N. Y. Supp. 48. As was said by the Court of Appeals in Meeker v. Draffen, supra, "no will has a brother," and the language of each testator must be studied by itself in order to learn its intention. For the reasons above stated, and from the language of the will itself, we are of opinion that when Thomas Morton gave his property, on the death of his son, to his "wife and children then living in equal shares," he meant to include any wife who might survive his son whenever married, as well as any children that might afterwards be born to said son.

The decree of the surrogate should be modified as to allow the claim of the appellant Florence M. Morton to share in the principal of the trust fund, and to direct the distribution of said fund accordingly, and, as so modified, affirmed, with costs to the appellant payable out of the estate. Settle order on notice.

McLAUGHLIN, LAUGHLIN, and CLARKE, JJ., concur.

INGRAHAM, P. J. I dissent. It is now established that, unless there be something in the will indicating the contrary, a gift to the wife of a designated married man is a gift to the wife existing at the time of the will, and not to one whom he may subsequently marry. Van Brunt v. Van Brunt, 111 N. Y. 178, 19 N. E. 60. A gift to the "widow" of a designated person, however, has a broader application, and includes such wife as may survive him. Meeker v. Draffen, 201 N. Y. 205, 94 N. E. 626, 33 L. R. A. (N. S.) 816, Ann. Cas. 1912A, 930. When the testator died, his son Thomas was married, and he then had a wife and children living. By the third clause of his will there was a devise of a house for life to his son Thomas, and at his decease a devise over "to the wife and children of my said son in equal shares." This would clearly be a remainder that vested in the living wife and in case the living wife died, and his son Thomas married again, the second wife would take no interest in this devise. No question is presented, however, in relation to this provision. By the fourth clause of the will, the testator directed his son Thomas to carry on the business during his life. Out of the proceeds of such business the son was to draw for his living expenses $60 a week, and the remainder of the profits should be invested and "paid to his children and said wife in equal shares." It was clear that the testator intended by this provision to provide for the existing wife, and that her successor had no interest in this provision. The same clause then contains the further provision under which the question arises:

"And, at the decease of my said son (or sooner if said trustees, the survivors or survivor of them, shall find and determine that the continuation of the said business shall not be prohibited) I direct, authorize and empower them to sell and convey the said premises Nos. 63 and 65 Elizabeth street, New York, either in their discretion at public or private sale, also the aforesaid property, patents, machinery, stock and articles connected therewith. And I direct that said trustees, the survivors or survivor of them shall then invest the proceeds of such sales on safe security; and pay over the interest thereof as soon as received, to my said son Thomas S. Morton, for and during his natural life; and, at his decease, the principal of said proceeds shall belong to his wife and children then living in equal shares to whom I do hereby give and bequeath the same. If any child of his shall die before his decease, leaving issue, such issue shall be entitled to the share its parent would have had if living."

Whenever in this will the testator speaks of his son Thomas' wife, it seems to me he clearly refers to the existing wife, with whom he was acquainted. She it was, the mother of his grandchildren, who was to receive this interest in his estate. There is nothing in this clause as to the proceeds of the premises in Elizabeth street that would indicate that he had a different intention than in the other pro-

visions that·he made for Thomas and his wife and children. It seems to me that in this clause as in the other portions of the will he was speaking of the then existing wife of Thomas and she it was he had in mind when providing for the ultimate distribution of his estate. The words "then living" I think apply to the children of his son Thomas, and that appears from the subsequent clause which provides that, if one of Thomas' children should die before Thomas leaving issue, such child should be entitled to the parent's share. In each of the cases relied upon in the prevailing opinion, there were special words which would indicate an intention of the testator to include the wife that the life tenant left surviving, and not the existing wife at the time of the death of the testator. Each of these devises and bequests in the will to Thomas for life with remainder over to his wife and children were remainders that vested on the death of the testator. It is true that the remainder in the children was subject to be divested by their dying before the life estate terminated, but I think no intention can be found to substitute as the remainderman the wife of Thomas who was then living a subsequent wife if Thomas should again marry.

I think, therefore, the decree of the surrogate should be affirmed.