## Hartley Estate

Before Klein, P. J., Bolger, Lefever, Saylor and Shoyer, JJ.

*Brenner & Brenner*, for exceptants.

*James H. McHale* and *Richard J. Raab*, contra.

SHOYER, J., February 21, 1958.—Three sisters of Mary D. Hartley, who would be her only heirs under our intestate laws, except to the ruling of the learned auditing judge who awarded the residue of her estate to Herbert R. Whitehead, whom she also named as her executor. Like most holographic wills drawn by a lay person, the present instrument is not free from difficulty in construction. In testatrix's own hand, on a single sheet of paper, her will is as follows:

"July 13th 1956

To Whom this may concern:

I am in my sound mind & body.

Leaving Herbert R. Whitehead soul executor of my will.

leaving

222 W. Gorgas Lane my house

Bank acc't at Germantown Saving Fund

Bonds at Safe deposit box Key #N16096 in The Germantown Saving Fund Bank

Acc't at Hamilton Saving & Loan Association

All my personal things to do as he wishes

I have 3 sisters

Jean, Stella & Helen.

I leave them nothing I wish this to be so. They have never cared how I got along. I leave them my love Herbert has been my adopted brother. He saw to everything took care of repairs of the home and many of my ills.

I have a Vault at Cheltenham Abby. Herbert take care of the funeral plain as can be.

I remain

Mary D. Hartley

*Witnessed—Mary M. Croce
*Witnessed—Mary McCoy
Girls from Safetee Glass Co."

We are relieved of the burden of deciding in the first instance whether this writing is a will because in her second sentence decedent has labeled it as such, and her sisters concede that the learned auditing judge was correct in making an award of decedent's "personal things" to Herbert R. Whitehead. They contend, however, that for want of a designated beneficiary they are entitled to the residue as upon an intestacy.

Looking to the four corners of this will to gather testatrix's intent, we are certain that she did not intend to die intestate, and in this instrument she did not fail of her purpose. The word "leaving" which comprises the fifth line is unquestionably a dispositive word. In lay language there is no more commonly used word for testamentary disposition than the verb "to leave". Among the many dictionary definitions of this verb, its use in expressing a testamentary bequest is stated as its primary meaning. We would err if we assumed that testatrix's failure to adopt the scrivener's traditional words of art, viz., "give, devise and bequeath", indicated any less of a dispositive intent on her part. The court must gather from the four corners of the will, testatrix's intent: Ervin Estate, 367 Pa. 58, 61; Swentzell's Estate, 294 Pa. 261; which is the "pole star" for our guidance: Prime's Petition, 335 Pa. 218. We are not to rely on established rules of construction as we might if interpreting a lawyer's language: Buzby Estate, 386 Pa. 1, 7, 9.

Following the word "leaving", testatrix has listed, one after another, her assets, placing the most valuable one, "my house", first. Her use of a separate line for each item is a common method of listing a series of articles which are related in some manner; in this instance, by her ownership of all. Each line, including the final clause, "All my personal things, to do as he wishes" starts with a capital. The absence of a comma or other connecting link at the end of each line

is also consistent with common usage when each item is allocated a separate line, instead of the various articles being joined one after another across the full width of the paper.

The identity of the beneficiary is sufficiently indicated by the pronoun "he", referring to Herbert R. Whitehead, the one and only male mentioned in the will. The coherence of thought, expressed in the sequence of words commencing with "leaving" and ending with "wishes", marks this as a complete sentence despite the absence of a capital "I" and a final period. We thus have a full, complete and dispositive statement expressing with no uncertainty testatrix's intent.

It is agreed that the assets enumerated by testatrix constitute all of the assets which she owned on the date the will was signed. Yet her sisters would have us believe that except for the disposition of all her "personal things" she was merely making an inventory of her most valuable assets without disposing of them. For this court to so hold would be to achieve a result both absurd and unreasonable. As aptly stated by the learned auditing judge: "In the instant will there are four people mentioned by name: Herbert R. Whitehead, who is designated executor, and the three claimants, who are disinherited. The testatrix did not appoint Mr. Whitehead in the conventional fashion. Instead, she used the word 'leaving'. She then expressed her reason for giving nothing to her sisters and was equally articulate in giving her reason for bestowing her estate on Mr. Whitehead: 'Herbert has been my adopted brother. He saw to everything, took care of repairs at the home and many of my ills'." Such plain words, we may add, thoroughly rebut the heirs' presumption against disherison: Rzedzianowski's Estate, 148 Pa. Superior Ct. 361, 369.

"Where words used might under a given construction lead to a result which is highly improbable, the

court will lean toward a construction that will carry out the natural intention of the testator. . . . The law will impute to a testator's words such a meaning as under all the circumstances will conform to his probable intention and be most agreeable to reason and justice. . . .": Riegel v. Oliver, 352 Pa. 244, 247.

Where testatrix's intent to bestow her estate upon a named beneficiary is clear, and it is equally clear that she is disinterested in her next of kin, or opposed to giving them anything as appears in this will, the court will not hesitate to give such construction to testatrix's language as may be required to effect her intent. Thus in Swentzell's Estate, supra, "personal estate" was held to include real estate, and our Supreme Court went on to say, page 265: "While precedents in will cases are of little value . . . two cases brought to our attention are helpful in concluding as to the one in hand. In Talbot v. Anderson, 292 Pa. 454, we held that the word 'money' used in a will was enlarged by its context and included real estate, and in Arnold's Est., 240 Pa. 261, that 'my jewelry and other personal things' passed title to the entire personal estate."

Because this testatrix has unequivocally manifested her intention as we have construed it above, it is unnecessary for us to enlarge or extend the phrase "my personal things".

We have no difficulty with the clause "to do as he wishes". Our courts recognize such language as creating a power of disposal and consumption: Kidd's Estate, 293 Pa. 21; II Hunter, Commonplace Book 1056, §1(a), which, as exceptants concede, has been validly exercised by Herbert R. Whitehead in his own favor with regard to her "personal things".

The learned auditing judge was misled by counsel for the accountant who stated at the audit that the envelope enclosing the will was probated with it. Had

counsel complied with our rule *1.4 in preparing his papers for audit and certified with exactitude a true and correct copy of the will, the error complained of in the fourth exception would have been avoided. At the argument before us it developed that the register of wills had not made the envelope a part of the probated will and hence we must eliminate it from our consideration. As the learned auditing judge did not *found* his decision on the envelope's endorsement, but made use of this writing merely to "buttress" his opinion, our ruling on this exception is not material. Were it otherwise, we would sustain it.

For the above reasons, all exceptions are dismissed and the adjudication is confirmed absolutely.