## Ellis Estate

342

Before Klein, P. J., Bolger, Lefever, Saylor, Shoyer and Burke, JJ.

*J. Peter Williams* and *Drinker, Biddle & Reath,* for the exceptants.

*James R. Ledwith, Ernest Scott* and *Pepper, Hamilton & Scheetz,* contra.

*John F. Thaete,* guardian and trustee ad litem.

## ADJUDICATION

BURKE, J., January 23, 1968.—This trust arises under item twelfth of the will of Frank H. Ellis, who died on April 12, 1925, and the codicils thereto.

After providing for an intestate share of principal or income for his wife, Mary A. Ellis, testator gave the balance of his residuary estate in trust, to apply as much thereof as might be necessary for the support, education and needs of his three named grandchildren, Gage Banks Ellis, Frank H. Ellis, 3rd, and Augusta Willoughby Gage Ellis, during minority, and as each grandchild attained age 21, to pay him or her $10,000 per annum until such grandchild attained age 25, and thereafter to pay him or her one third of the net income for life.

All of the grandchildren were the children of testator's son, Willam Howell Ellis, who predeceased his father on October 23, 1916. Testator's only other child, Frank, died in infancy. When testator made his will in 1921, all of the grandchildren were minors; in fact,

Frank, the eldest of the grandchildren, had not yet attained full age when testator died in 1925.

Testator's wife, Mary A. Ellis, died on December 9, 1925, in the same year as her husband.

It is further provided in item twelfth that upon the death of any grandchildren leaving issue, the portion of principal from which such grandchild received the income shall be distributed to such issue per stirpes.

Consequently, when testator's grandson, Gage Banks Ellis, died on August 29, 1959, survived by three children, Elizabeth, Gage and Willoughby, one third of the principal was distributed to them in equal shares under a prior adjudication of this court.

The accounting is of the fund awarded in trust for testator's surviving grandchildren, Frank H. Ellis, 3rd, and Augusta Willoughby Ellis Little, by an adjudication of President Judge Klein, filed on December 19, 1960.

Frank H. Ellis, 3rd, died a resident of Chester County, Pa., on October 18, 1966. He left no issue surviving. His death gives rise to the present accounting.

Augusta Willoughby Ellis Little survives and the trust continues. She has two children, Arthur Dehon Little and Augusta W. L. Lowe. Arthur Dehon Little has one child, Cameron, a minor, and Augusta W. L. Lowe has one child, Galen, a minor.

The children of Gage Banks Ellis, testator's deceased grandson, survive. Elizabeth G. E. Meyns has two children, Willoughby and Alexandra, both minors; Gage Banks Ellis, Jr., has three children, Elizabeth, Amanda and Timothy, all minors; and Willoughby K. E. Royce has one child, Thomas, a minor.

By decree dated September 12, 1967, sur petition, John F. Thaete, Esq., was appointed guardian ad litem for the minors having contingent interests in re-

mainder, and trustee ad litem for unborn persons and all other unascertained interests.

A question of distribution arises by reason of the death of testator's grandson, Frank H. Ellis, 3rd, without issue. Augusta Willoughby Ellis Little contends that the income share to which her brother was entitled now passes to her as the surviving life tenant, and that the entire corpus must remain in trust for her benefit. Contra, the children of Gage Banks Ellis, testator's deceased grandson, contend that one half of the principal of Frank's share (being one fourth of the entire corpus) should be distributed now to them and that only the remaining one half should remain in trust for Augusta.

In passing upon the contentions of the respective parties we must ascertain, if at all possible, the intent of testator, and that intent must be gathered from the entire will, not merely from isolated clauses or provisions thereof: Dinkey Estate, 403 Pa. 179 (1961). The intention of testator is the pole star and that intention must be gathered from a consideration of the entire will, including its scheme of distribution as well as its langauge, together with all the circumstances attendant and surrounding testator when he made the will: Turner Estate, 408 Pa. 530 (1962). Precedents are of little value in the construction of wills, because, when used under different circumstances and with different context the same words may express different intentions. When the intent of testator, and by that is meant his actual intent, can be fairly gathered from his words, the fact that another testator had used the same words with a different meaning is of no avail: Jackson's Estate, 337 Pa. 561 (1946); Burns Estate, 380 Pa. 623 (1955). The proper course of procedure for the interpreter of a testamentary writing is not to apply rules of construction until all reasonable effort to deduce a meaning from

the writing itself has been exhausted with no understandable and sensible result: Buzby Estate, 386 Pa. 1 (1956).

Keeping these precepts in mind, we will consider testator's will, particularly the pertinent provisions thereof which relate to income in the event of the death of any grandchild of testator without issue. Contemplating the death of a grandchild without issue, testator provided (item 12):

"And upon the death of any of my said grandchildren without leaving issue to survive him or her, to apply or pay the share of income to which the one so dying was entitled at the time of his or her death to or for the support of the others of my said grandchildren who shall be living in equal shares in the same manner and with the same powers as are hereinbefore provided with respect to their original shares of income".

Continuing, testator provides:

"If but one grandchild shall be living, the other two having died without issue to survive them, then the whole income shall be applied or paid to or for the support of such living grandchild for life in the same manner and with the same powers as are herein provided with respect to his or her original share of income".

With respect to the first provision, the children of Gage Banks Ellis contend that when testator provided that the share of income of any grandchild dying without issue should pass to the "others" then living, he provided only for the share of the grandchild first to die, since only in that event could such income share pass to the "others" then living "in equal shares" in the manner provided with respect to "their" original "shares" of income. From this premise, they argue that this provision is not applicable to the income share of Frank, who was the grandchild second to die. Hence,

they conclude that in these circumstances testator necessarily intended an immediate distribution of principal between the issue of Gage, the grandchild first to die, and the trust for Augusta, the living grandchild.

It is most improbable that testator ever contemplated the order in which his grandchildren would die with or without issue, and to conclude that he intended a different distribution if one grandchild should die before another is likewise most unreasonble. Such a narrow construction of testator's language is not justified, nor is it in accord with the language used. Testator expressly states in the opening clause, "And upon the death of *any* of my said grandchildren without leaving issue to survive him or her . . ." He does not describe the event as the death of the grandchild first to die. Testator used the word "any" to include the second to die as well as the first. The word "any" is sometimes used in the sense of "all" or "every" and its meaning is most comprehensive: Belefski Estate, 413 Pa. 365 (1964). In Vandergrift Estate, 406 Pa. 14 (1962), the court stated that by the use of the word "any" ("if any of my said sons or daughters die . . . without leaving any child or any issue . . .") testator intended to include the last child to die as well as the first to die. True, in the Ellis will the beneficiaries who take the income share of such grandchild are not described precisely, but testator's use of the plural to include the singular, although not precise, is not fatal to his intent to provide survivorship in income for either or both of his living grandchildren if any should die without issue.

Nor does the later provision of the will, which passes the entire income to testator's living grandchild should the other two die without issue, justify the conclusion that testator intended the former provision to apply only in the event of the death of the first grandchild to die. The two provisions are not incompatible; the

later provision, if anything, serves to emphasize testator's intention that the income shares of any who die without issue shall pass to the living grandchild. In ascertaining the intent and purpose of a testator, as expressed by his will, we should, if possible, harmonize the language so as to give effect to all the provisions: Vandergrift Estate, supra. Whether survivorship in income is intended depends not upon the precise language of the will or form of expression, but upon the meaning to be gathered from the will in its entirety: McCallum's Estate, 211 Pa. 205 (1905). When testator's intention becomes clear from the entire will read in the light of attendant circumstances, rules of construction are unnecessary: Britt Estate, 369 Pa. 450 (1952).

The will provides for a principal distribution to the issue of testator's grandchildren in either of two events: (a) upon the death of any grandchild leaving issue, or (b) upon the death of the last surviving grandchild without issue if there should be issue then living of either or both of testator's deceased grandchildren. Neither of these events is applicable at this time. Indeed, to make a principal distribution now would defeat the rights of other possible issue living at the termination of the trust.

That testator preferred his grandchildren to have the income of the trust was natural. They were the primary objects of his bounty. He had no other living issue, either when he made the will in 1921 or when died in 1916, Frank was 12, Gage 9 and Augusta 7 years of age. It is pointed out that testator was a wealthy man and had an estate ample to provide for both his grandchildren and their issue. He did provide amply for both, but he preferred his grandchildren, the only issue he knew, to have the income if any grandchild should die without issue.

As I construe the will, when testator provided for the income share of "any" grandchild who died without issue to pass to the others, he did not say and did not mean the grandchild first to die to the exclusion of the grandchild second to die. He said "any" and meant it. Naturally, one grandchild would die before another and, of necessity, upon the death of two, only one would survive, but nowhere in the will does testator hazard a guess as to which grandchild would die first or that the first to die would leave no issue surviving.

In McDowell Estate, 68 D. & C. 191, to which exceptions were filed and dismissed, our colleague, Judge Bolger, construed a will remarkably similar to the Ellis will. In McDowell, testator created a trust of his residuary estate to pay the income in equal shares to his children for their respective lives. Upon the death of any child leaving children, such children were to receive the principal of their parent's share, but if any child should die without issue, the income of such share was to be paid in equal shares to the surviving children. Warren died survived by two children, who took their father's share. Joseph died without issue. Another child, Rebecca, survived. In dismissing the claim of Warren's children to a portion of Joseph's share, Judge Bolger in his adjudication held that the

". . . testator intended the trust to continue in its entirety with income payable in equal shares to his children until one of them should die leaving children. Upon the happening of that event there was to be a partial termination of the trust . . . with no further termination of the trust of distribution of principal until one of them should die leaving children. Thus, the testator in effect gave a preference to his children in any share of income released by death of a life tenant without issue".

Testator provides that upon the death of any of his

grandchildren leaving issue him or her surviving ". . . a share of principal of said Trust Estate represented by the proportion of income to which the one so dying was entitled at the time of his or her death . . ." shall be allotted and transferred to such issue by representation. Because of this provision, it is argued that the issue of Gage Banks Ellis will suffer a grave injustice if the court should conclude that the share of principal from which Frank received the income must remain in trust for Augusta. Be that as it may, we cannot rewrite testator's will. If any inequality should utimately result it must be attributed to the testator. His will must control the distribution of his estate: Brown's Estate, 208 Pa. 161 (1904). Courts cannot, even when aided by hindsight and the ingenuity of counsel, rewrite a testator's will, or distort or torture his language in order to attain what we believe is beneficial and wise, or even what we believe testator would or should have provided if he had possessed a knowledge of all the presently existing circumstances: Kelsey Estate, 393 Pa. 513 (1958). In any event, the distribution of principal upon the death of the surviving life tenant is a future question with which the court may not concern itself at this time. As long as a valid life estate is in existence, any determination as to the utimate disposition of the corpus is premature: Butler Estate, 364 Pa. 279 (1950). Nevertheless, nothing in this adjudication is intended to affect the rights of any of the parties when principal becomes distributable at the termination of the trust.

It is my opinion, considering the language of the will in its entirety and the testamentary plan, as well as the circumstances surrounding testator when he made the will, that he intended the income share of any grandchild who died without issue to pass to his other living grandchild or grandchildren. I so decide . . .

And now, January 23, 1968, the account is confirmed nisi.

## SUR EXCEPTIONS TO ADJUDICATION

Per curiam, April 5, 1968.—We all agree with the conclusions of the learned auditing judge, for the reasons so well set forth in his comprehensive adjudication, and concur in his statement that nothing contained in the adjudication is intended to affect the rights of any of the parties to make claim to principal when it becomes distributable at the termination of the trust.

We have carefully examined Vogdes' Estate, 16 Dist. R. 377 (1907), upon which exceptants place great reliance, and regard it as inapposite. Accordingly, the exceptions are dismissed, and the adjudication confirmed absolutely.