## Houston Estate.

580

Argued January 15, 1964. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Charles J. Biddle,* with him *John E. Walsh, Cuthbert H. Latta,* and *Drinker, Biddle & Reath,* for appellants.

*James A. Montgomery, Jr.,* with him *Paul Maloney,* and *Pepper, Hamilton and Scheetz,* for appellants.

*Richard K. Stevens,* with him *Seth W. Watson, Jr.,* and *Stradley, Ronon, Stevens and Young,* for appellees.

*Irvin Stander,* Special Counsel, with him *Charles F. Nahill,* Special Assistant Attorney General, *Vincent X. Yakowicz,* Deputy Attorney General, and *Walter E. Alessandroni,* Attorney General, for Commonwealth, appellee.

*Harold C. Wilkenfeld,* with him *Lee A. Jackson, Meyer Rothwacks, Louis F. Oberdorfer,* Assistant Attorney General, of the Washington, D. C. Bar, *Sidney Salkin,* Assistant United States Attorney, and *Drew J. T. O'Keefe,* United States Attorney, for United States.

OPINION BY MR. CHIEF JUSTICE BELL, June 1, 1964:

This appeal involves the important questions—was testator's gift of principal contingent or vested, and if vested, when vested and who took thereunder?

Henry H. Houston died a resident of Philadelphia County on June 21, 1895. His will was executed on February 2, 1892. At that time he had a wife, Sallie S. Houston; a married son, Samuel F. Houston; a married daughter, Sallie Houston Henry; and an unmarried daughter, Gertrude Houston, who married and became Gertrude Houston Woodward on October 9, 1894. All of these children survived the testator.* At the time of testator's death he had six living grandchildren; six other grandchildren were born after his death.

---

* Mr. Houston had had three other children who predeceased him, unmarried and without issue: Gertrude Bonnell Houston (who died in 1857); Eleanor Anne Houston (who died in 1875); and Henry H. Houston, Jr. (who died in 1879).

582

Testator executed a lengthy will, including a lengthy trust. The will contains 64 items and covers 25 printed pages. Testator provided in "Item Fifty-ninth: All the rest residue and remainder of my estate real and personal wheresoever the same may be I give devise and bequeath to the Executors hereinafter named in trust to pay over the *net income** arising therefrom in the manner following." There then follow five separate gifts of a specified amount to be paid annually to five of testator's cousins *"during her [or his] life."* These are followed by 11 directions to pay out of the said income the sum of specified dollar amounts annually to named individuals *during their respective lives, and at the death of each,* he provided: "I direct to be paid out of the principal of the residuary estate the sum of [specified] Dollars in equal shares *to each of his children who may be living at the time of his decease,*** the children of any deceased child taking however their deceased parents share." There then followed three additional gifts to a Church, and an annual gift to a sister-in-law during her life upon certain conditions.

We come then to Paragraph *Twenty-second* of Item Fifty-ninth which, relevantly, is the most important part of the will, and reads:

"Twenty-second: All the rest, residue, and remainder of the *net income* of my estate including herein such income as may fall into and become a part of the residue by reason of the death of any of the beneficiaries hereinbefore mentioned, I direct shall be paid and distributed one fourth thereof to my beloved wife Sallie S. Houston *during her life.* One fourth thereof to my daughter Sallie H. Henry *during her life,* one

* Italics throughout, ours.
** This language was occasionally varied by the expression "to such of the children of —————————— as may be living at the time of her decease . . . ."

fourth thereof to my son Samuel F. Houston *during his life* and one fourth thereof to my daughter Gertrude Houston *during her life.* On the death of my said wife I direct that the one fourth of the income payable to her shall thereafter be payable to my said children in equal shares *during their lives* (sic). and should any of my said children be dead *leaving children* at the time of the death of their mother I direct that the said income be *paid to the children* of such deceased child until the death of my last surviving child. On the death of any one of my said children *without leaving lawful issue him or her surviving* I direct that the income heretofore payable to such deceased child shall be paid to my wife and *surviving children* in equal shares and if either of the said children shall *then be dead leaving issue,* such issue shall take the deceased parents share. On the death of any one of my said *children* leaving *lawful issue him or her surviving,* I direct that the *income* to which such deceased child would have been entitled if living, shall be paid in equal shares to and among his or her children and the issue of deceased children, *if any there be,* such issue taking their deceased parents share, until the death of my last surviving child. *On the death of my last surviving child* I direct that *the whole of the principal* of the trust estate shall be distributed *in equal portions to and among my grand-children,* the children of any deceased grand-child taking their deceased parents share."*

Both appellants and appellees also point out, although each draw a different conclusion therefrom, that testator specifically provided for the spouse of each of his then married children. For example, in the

---

* Testator's will included a spendthrift trust clause for income beneficiaries. Notwithstanding the contention of the appellants, we do not consider that this affects in any way the basic question here involved.

Fifth Item of his will testator gave his son-in-law $100,000, and in the Sixth Item, his daughter-in-law $100,000 in the 6% bonds of the International Navigation Company. He also made many bequests to his relatives, in-laws, and friends, some without any gift over, most of them, however, with a gift over upon or in the event of the death of the first legatee or life tenant.

Sallie S. Houston, testator's widow, died intestate on November 13, 1913; his daughter, Sallie Houston Henry, died on July 6, 1938; his son, Samuel F. Houston, died May 2, 1952; and testator's *last surviving child,* his daughter, Gertrude Houston Woodward, died on October 2, 1961.

(1) Samuel F. Houston (testator's son) had four children, three of whom still survive. The fourth, Henry H. Houston, II, born April 5, 1895, was killed in action in World War I, on October 18, 1918. His father, Samuel F. Houston, was his sole heir.

(2) Sallie Houston Henry (testator's daughter) had two children (daughters) who survived testator's last living child. She also had a son, T. Charlton Henry, who predeceased his mother, leaving a wife and two daughters who are still living. Charlton willed his entire estate to his wife.

(3) Gertrude Houston Woodward (testator's daughter) had three children who survived her and two who predeceased her. Her son, H. H. Houston Woodward, was born February 27, 1896, and was killed in action in World War I on April 1, 1918. Another child of Mrs. Woodward, Gertrude Houston Woodward, *Jr.,* who was born April 21, 1909, died March 6, 1934. Each of these children died intestate and unmarried. The sole heirs of each of these deceased children were their parents, Gertrude H. Woodward and Dr. George Woodward.

If the remainders for testator's *grandchildren* were vested at testator's death, or became vested on birth after testator's death, subject in both cases to being *divested in favor of their children* if any such grandchild predeceased testator's last surviving child, the principal of the residuary trust (which is carried at over $25,000,000, but is allegedly worth approximately $145,000,000) will be divided into *12 equal parts*—eight of such parts being for testator's eight living grandchildren; three of such parts for the heirs (or personal representatives) of testator's three grandchildren who died after testator's death but before the death of testator's last surviving child (Mrs. Woodward), intestate and unmarried; and one such part for the two (living) daughters of testator's deceased grandson, T. Charlton Henry.

If, however, the remainders were contingent upon testator's grandchildren or their children living at the death of testator's last surviving child (Mrs. Woodward), testator's remainder estate would be divided into and distributed in nine *equal* parts—eight such parts to testator's eight living grandchildren, and the ninth part to the two living daughters per stirpes of testator's deceased grandchild, T. Charlton Henry.

The Orphans' Court unanimously held (in scholarly opinions) that testator gave a vested interest in the principal of his residuary trust estate in equal portions to his grandchildren who (a) survived him, or (b) were born after his death, the children of any deceased grandchild taking their deceased parent's share —and consequently divided (and awarded) the principal into 12 equal parts.

We first place ourselves in the armchair of the testator and remember that the intention of the testator is the polestar in the construction of every will.

Pertinent Principles of Law

In *Lewis Estate,* 407 Pa. 518, 180 A. 2d 919, the Court (quoting from *Burleigh Estate,* 405 Pa. 373, 376, 175 A. 2d 838), recently said (page 520) : " 'It is now hornbook law (1) that the testator's intent is the polestar and must prevail; and (2) that his intent must be gathered from a consideration of (a) all the language contained in the four corners of his will and (b) his scheme of distribution and (c) the circumstances surrounding him at the time he made his will and (d) the existing facts; and (3) that technical rules or canons of construction should be resorted to only if the language of the will is ambiguous or conflicting, or the testator's intent is for any reason uncertain: Dinkey Estate, 403 Pa. 179, 168 A. 2d 337; Pruner Estate, 400 Pa. 629, 162 A. 2d 626; Wanamaker Estate, 399 Pa. 274, 159 A. 2d 201; Hope Estate, 398 Pa. 470, 159 A. 2d 197.' "

This law is stated and reiterated in a myriad cases before and several after *Lewis Estate.* In *Walton Estate,* 409 Pa. 225, 186 A. 2d 32, the Court once again pertinently said (page 231) : " ' " 'No rule regarding wills is more settled than the great General Rule that the testator's intent, if it is not unlawful, must prevail' " ': Collins Estate, 393 Pa. 519, 522, 143 A. 2d 45. We reiterate what by now is hornbook law: ' "The testator's intention is the pole star in the construction of every will and that intention must be ascertained from the language and scheme of his [entire] will [together with the surrounding facts and circumstances]; *it is not what the Court thinks he might or would or should have said in the existing circumstances,* or even what the Court thinks he meant to say, but *what is the meaning of his words.* Kelsey Estate, 393 Pa. 513, 143 A. 2d 42; Britt Estate, 369 Pa. 450, 87 A. 2d 243; Sowers Estate, 383 Pa. 566, 119 A. 2d 60; Cannistra Estate,

384 Pa. 605, 121 A. 2d 157." Saunders Estate, 393 Pa. 527, 529, 143 A. 2d 367. See to the same effect Althouse Estate, 404 Pa. 412, 172 A. 2d 146. . . .': Woodward Estate, 407 Pa. 638, 640, 182 A. 2d 732." .

Appellants' Contentions

. Appellants vigorously contend—and this is their principal contention—that the testator intended to give the remainder (principal) of his trust estate to, and *only to living* persons, and that he demonstrated this intent *impliedly* in his gift of this remainder (principal) and very many times *expressly* throughout his entire will, and particularly in other gifts in this *Twenty-second* paragraph. Numerous times throughout the prior provisions of this will, testator made absolute gifts to then living persons *or to those surviving* a life beneficiary, *or to the living* members of a class, after the death of a named life beneficiary. Moreover, in this very *Twenty-second* paragraph of Item Fifty-ninth, as well as in other paragraphs of Item Fifty-ninth of his will, testator gave the income from a particular trust *only to living persons.* From a consideration of his *entire* will, and particularly from his gift of *income* only to *living* persons in this Twenty-second paragraph, appellants argue that testator must have meant and intended to give the *principal* of this large trust estate to his *then living* descendants, namely, to such of his grandchildren and the children per stirpes of his deceased grandchildren as were living at the death of his (testator's) last surviving child. Appellants further contend (1) that this construction is fortified by testator's evident intent to keep this residuary trust estate in his family blood line, since (a) he made no provision therein for a spouse of a deceased grandchild, nor (b) did he give a deceased grandchild a power of appointment, and (2) that this construc-

tion would obviously have the desirable result of a colossal tax saving for his descendants. This reasoning is plausible and appealing but unfortunately has three serious weaknesses.

First and most important, appellants' interpretation glosses over or ignores the clear language of testator's gift of the principal *in equal portions to his grandchildren per capita,* which at first blush certainly creates in the grandchildren a *vested* interest. Moreover, this language—at least prima facie—shows a different intent from testator's *gift of income* to *his grandchildren per stirpes.* Secondly, in *11* paragraphs in his very *Fifty-ninth Item* of his will, as well as in many prior items in his will, testator made gifts conditional upon survivorship, *thus clearly demonstrating that he knew how to make a contingent gift, i.e., conditional upon survivorship when that was his intention.* The third weakness of appellants' contentions is the oft repeated statement that testator demonstrated in the language of his entire will that he wished to leave his property *only to living* persons. This is substantially but not entirely correct.*

---

* While this statement was not challenged by any of the attorneys, a careful analysis of the testator's gifts of income will show that in possible although remote contingencies a *living party* is not provided for or apparently required in the gifts of income in the following instances: For example, in the provision for the wife's one-fourth of the income, there is no provision covering the contingency which would occur if one of the children of testator's deceased children should die before the death of testator's last surviving child. Next, with respect to the gift of income on the death of any of testator's children *without leaving issue,* a similar hiatus or unprovided for contingency occurs, viz., if any one of the issue of testator's other surviving children dies before the death of testator's last surviving child. The third unprovided for, although likewise remote, contingency is that in the gift of income, upon the death of testator's wife, to the children and issue of one of testator's deceased children, there is no provision for the contingency that would arise in the event that one of the living issue who were

## Appellees' Contentions

Appellees' basic contentions are two fold: (1) Testator gave the *principal* of his trust estate *clearly* and *unquestionably* to his *grandchildren per capita,* and this is in striking contrast with his gift of *income* to his grandchildren *per stirpes;* and (2) All the canons of construction require that the gift of principal be construed to be *vested* in testator's grandchildren, subject to subsequent divesting upon the happening of one particular event.

## Analysis of Testator's Language

When we read and reread and very carefully analyze all of testator's will from its four corners, and of course particularly the language of the *Twenty-second* paragraph of the Fifty-ninth item—we believe that he gave and intended to give the whole of the principal of his residuary trust estate (after the death of his last surviving child) to his *grandchildren per capita,* or if any grandchild was at that time dead and had left children, such children should take their deceased parent's share. In order to adopt appellants' interpretation and that of the dissenting opinion, we would have to change and rewrite the testator's gift of principal by *interpolating* the words "then living," so that the testator's gift of principal *as changed* would read: "On the death of my last surviving child, I direct that the whole of the principal of the trust estate shall be

receiving income should die before the death of testator's last surviving child.

All of this indicates, sometimes clearly and at other times very remotely, that the testator did not in every instance make his gifts conditional upon survivorship or living, and therefore it cannot be accurately said that testator demonstrated in the income provisions of this *Twenty-second* paragraph that he always wished to leave his income *only* to living persons.

distributed in equal portions to and among my *'then living'* grandchildren, the *'then living'* children of any deceased grandchild taking their · deceased parent's share."

Expressing the same thought in more technical language, we believe testator gave and intended to give a *vested* interest in this *principal per capita* (a) to those of his grandchildren who were living at the time of his death and (b) those subsequently born—such gifts to *vest in possession* at the death of testator's last surviving child, *subject to being divested* in one instance *only,* viz., *if any such grandchild was deceased leaving children.* In that particular event, the children of any such deceased grandchild were given their parent's interest (or share) per stirpes.

We are impressed by the fact that in this meticulously drawn* will—in spite of the fact that throughout his entire will and throughout this very *Twenty-second* paragraph, testator had repeatedly demonstrated that he knew how to make a gift, contingent upon survival—testator was careful not to say that he gave this principal in equal shares to his grandchildren *who were living at the death* of testator's last surviving child, with a substitutionary gift to the *then living children* of any deceased grandchild per stirpes. The gift of principal to his *grandchildren per capita* was express and absolute; no prior condition or limitation or contingency of survivorship was attached thereto. This clearly expressed gift of principal to his grandchildren per capita was subject only to one condition, a condition subsequent, viz., that if a grandchild was deceased at the death of testator's last surviving child leaving children, such deceased grandchild's children should take their deceased parent's share. Testator's grandchildren were his designated legatees, and if any

---

* Except in three possible and very remote contingencies which were not provided for.

grandchild was deceased at the termination of the last life estate, leaving children, the deceased grandchild was the source and fountainhead of the interest of his children.

*This gift of principal* to testator's grandchildren *per capita,* we repeat once more, is in striking contrast to his gift of *income* to his grandchildren *per stirpes.* While a contingent interest can be created either expressly or by implication, the thought keeps recurring: If testator in this skilfully drawn will intended to give the principal of his remainder estate *to and only to* his grandchildren who *survived* his last living child, and to the children of his deceased grandchildren who were *then living,* why didn't he say so, when he had so often and so clearly created contingent interests in this very residuary trust as well as in other items throughout his will? It is both clear and certain that there was no express contingent gift of principal; moreover, considering the will in this particular paragraph and as a whole, we believe there was no contingent gift of principal by implication.

## Part II

Our interpretation of testator's intention as expressed in and by his will, is further *supported* by the canons of construction respecting vested and contingent interests.

### Vested or Contingent Interests

Whether a gift is contingent, or vested, or vested subject to be divested, has perplexed or vexed the Courts for centuries. Where a testator's language is ambiguous, or for any reason his intent is uncertain, Courts are aided in their discovery of his intent, by a consideration of whether the gift is vested or contingent. The rules as to vesting are (with but a few minor

exceptions) well settled, although (as we shall see) they are at times difficult of application and the cases are not always consistent or harmonious in their application of the rules or indeed in the language setting forth the rules.

In Gray, The Rule Against Perpetuities, 4th Ed., the law is well stated: "§101. Vested and Contingent Remainders. Since contingent remainders have been recognized, the line between them and vested remainders is drawn as follows: A remainder is vested in A., when, throughout its continuance, A., or A. and his heirs, have the right to the immediate possession, whenever and however the preceding freehold estates may determine. A remainder is contingent if, in order for it to come into possession, the fulfilment of some condition precedent other than the determination of the preceding freehold estates is necessary.

"§102. A remainder is none the less vested because it may terminate before the remainder-man comes into possession; thus if land be given to A. for life, remainder to B. for life, B. may die before A., yet the remainder is vested, for during its continuance, namely the life of B., it is ready to come into possession whenever and however A.'s estate determines. This result is not affected by the fact that the termination of the remainder is contingent; that is, that it is subject to a condition subsequent. *For instance, if land is devised to A. for life, remainder to B. and his heirs, but if B. dies unmarried then to C. and his heirs, B.'s remainder is vested, although it is possible that he may die unmarried in A.'s lifetime.*

. . .

"§108. Common Law Rule . . . Whether a remainder is vested or contingent depends upon the language employed. If the conditional element is incorporated into the description of, or into the gift to, the remainderman, then the remainder is contingent; *but if, after*

*words giving a vested interest, a clause is added divest-
ing it, the remainder is vested.* Thus on a devise to A.
for life, remainder to his children, but if any child dies
in the lifetime of A. his share to go to those who sur-
vive, *the share of each child is vested,* subject to be
divested by its death. But on a devise to A. for life,
remainder to such of his children as survive him, the
remainder is contingent."

See further to the same effect, Gray, The Rule
Against Perpetuities, §110; Jarman on Wills, Ch.
XXV, p. 773, 6 Amer. Ed.; Restatement, Property,
§254; 6 Hunter, Orphans' Court Commonplace Book,
pp. 148-149.

This was and long prior to 1892 had been the well
recognized law of Pennsylvania, as it was gradually
expounded over the years.*

In *Newlin Estate,* 367 Pa. 527, 80 A. 2d 819, the
Court stated at length the pertinent principles which
previously had been severally iterated (pages 532, 533,
534) : "If a bequest is to a class who take at the death
of a life tenant, the fact that the members of the class
are unknown or even not in being at the death of the
testator, or that their interest is subject to be in-
creased or decreased or divested by subsequent events,
will not render the gift contingent or violate the rule
against perpetuities: Edwards' Estate, 255 Pa. 358, 99
A. 1010; 360 Pa. 504, 62 A. 2d 763; Overbrook Heights
Building & Loan Assn. v. Wilson, 333 Pa. 449, 5 A. 2d
529; Reed's Estate, 307 Pa. 482, 161 A. 729; Mc-
Cauley's Estate, 257 Pa. 377, 101 A. 827; Lloyd's Es-
tate, 326 Pa. 230, 192 A. 98.

---

* *Rosengarten v. Ashton,* 228 Pa. 389, 77 A. 562 (1910), often
referred to as sui generis, has been impliedly overruled, or distin-
guished, or so limited as to effectually efface it, by a dozen subse-
quent decisions of this Court. In order to avoid any further con-
fusion, *Rosengarten v. Ashton* is now expressly overruled.

" 'Where an estate is given to a life tenant, with remainder to the children of the life tenant, the estate vests at once upon the birth of each child, subject to open and let in after-born children, . . . without regard to the question of whether or not a child survives the life tenant': Edwards' Estate, 255 Pa. 358, 361, 99 A. 1010; Edwards' Estate, 360 Pa. 504, 508, 62 A. 2d 763.

. . .

" 'Where a bequest is to a class, the vesting is not postponed because of uncertainty as to who, if any, may be the constituents of the class at the time fixed for the enjoyment of it. If there is a present right to a future possession, though that right may be defeated by some future event, contingent or certain, there is nevertheless a vested estate': McCauley's Estate, 257 Pa. 377, 382, 101 A. 827; Reed's Estate, 307 Pa. 482, 484, 161 A. 729.

. . .

". . . '. . . "The law leans to vested rather than to contingent estates, and the presumption is that a legacy is vested: Carstensen's Est., 196 Pa. 325 [46 Atl. 495]; Tatham's Est., 250 Pa. 269 [95 Atl. 520]; Neel's Est., 252 Pa. 394 [97 Atl. 502]; Rau's Est. [supra], and 'the presumption that a legacy was intended to be vested, applies, with far greater force, where a testator is making provision for a child or a grandchild, than where the gift is to a stranger or to a collateral relative:' Wengerd's Est., 143 Pa. 615 [22 Atl. 869]" '. . .'"

The intention of a testator or settlor to create a contingent interest must appear clearly and plainly,*

---

* Several cases state that an interest will not be construed to be contingent unless it is *impossible* to construe it as vested. The word "impossible" is an unfortunate expression, as many people believe that nothing is impossible. Several other cases use the expression "clear, plain and manifest" while others use "clear, plain. and indisputably" or "indisputable." However, we believe that it

otherwise the interest will be construed to be vested, or vested subject to be divested.

A myriad cases state, we repeat, that a Court is to place itself in the armchair of a testator and determine his intent from his language and the circumstances surrounding him at the time he made his will.

"However, where a testator uses words which have a legal or technical meaning, ' "they are to be so interpreted according to the law in effect at the testator's death unless the will contains a clearly expressed intention to the contrary": Farmers Trust Co., Executor, v. Wilson et ux., 361 Pa. 43, 46, 63 A. 2d 14, and cases therein cited: Ashhurst's Estate, 133 Pa. Superior Ct. 526, 3 A. 2d 218; . . . .' Collins Estate, 393 Pa. 195, 200, 142 A. 2d 178. . . ." Brown Estate, 408 Pa. 214, 224, 183 A. 2d 307.

There can be no doubt that when Mr. Houston's will was written and at the time of his death, and for a century prior thereto, his gifts of the principal or remainder of his trust estate created a vested interest in his grandchildren,[**] and since the will itself evidences the hand of an expert will-draftsman[***] it is persuasive that testator intended this gift to be vested rather than contingent.

---

is fair and correct to say that an analysis of these authorities discloses an intention in each of the prior cases to express the same meaning, albeit in different language. The variety of language used to express this test has caused such confusion that we deem it wise to herein use and apply the test hereinabove set forth in this opinion, since it appears to be the fairest and most correct test.

[**] Unless other provisions of the will contain a clearly expressed intention to the contrary. Section 14 of the Wills Act of April 24, 1947, P. L. 89, 20 PS §180.14; is inapplicable.

[***] Item Sixty-third provides, "In all matters requiring legal services or advice" the executors and trustees should consult "my attorney William W. Porter"; Porter was also a subscribing witness.

To summarize: We conclude that the language and scheme of testator's will, particularly the *Twenty-second* paragraph of Item Fifty-ninth, disclose an intention to make a vested gift of principal to his grandchildren, with no provision or condition, or any necessity for their surviving testator's last surviving child, but with one divesting condition, viz., if any grandchild of testator was deceased at the death of testator's last surviving child, such deceased grandchild's portion or share was to be distributed to his children.

We reach this construction of the will with regret because (a) it gives a share of the principal to descendants long dead, and (b) it would permit strangers to testator's blood (a deceased grandchild's spouse, or his legatees, or his heirs under the intestate laws) to receive a substantial portion of his estate without any express gift and (c) it greatly depletes, by colossal unforeseeable taxation, the property which the testator desired and intended to go to his descendants. However, such sentiments or results are not legally sufficient to allow us to ignore or distort testator's language, or rewrite his will. It is not what the Court thinks testator might or should or would have said if he could have foreseen the existing circumstances and conditions, but what he actually did say.

We agree with the lower Court that the family agreements upon which appellants rely, have no relevancy or bearing upon the issues herein presented, viz., the testamentary intention of the testator, and therefore deem discussion of them unnecessary.

Notwithstanding the very able argument of counsel for the appellants, the Decree must be affirmed.

Decree affirmed, all costs to be paid out of the principal of the residuary trust estate.

Mr. Justice JONES concurs in the result.

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

My reading and study of decedent's will and our past decisions[1] preclude me from joining the majority. In my view, the majority have incorrectly construed testator's gift of residuary principal.

Although almost three-quarters of a century span the years between decedent's will and its present construction, his intention, as expressed in his will and reflected by the circumstances surrounding his armchair, must prevail.

All must agree that the best evidence of decedent's intention is his language. "And, while the words employed in a will necessarily constitute the gauge of the testator's intent (Ludwick's Estate, 269 Pa. 365, 371, 112 A. 543), a construction that would lead to a highly improbable result is to be avoided, if at all possible; and a meaning conformable to the testator's plausible intent should be ascribed to his words if agreeable to reason: Riegel v. Oliver, 352 Pa. 244, 247, 42 A. 2d 602." *Fahey Estate,* 360 Pa. 497, 500, 61 A. 2d 880 (1948).

In seeking to ascertain the intention and meaning of decedent's language, this Court has said: "The proper course of procedure for the interpreter of a testamentary writing is not to apply rules of construction until all reasonable effort to deduce a meaning from the writing itself has been exhausted with no understandable and sensible result." *Buzby Estate,* 386 Pa. 1, 8, 123 A. 2d 723 (1956).

In reality, this controversy is governed by that portion of decedent's will which provides: "On the death of my last surviving child I direct that the whole of the principal of the trust estate shall be distributed in

---

[1] Keeping in mind, of course, that no will or testamentary trust has an exact twin or even a reasonably identical relative. This is due in part to the special and individual circumstances surrounding a testator.

equal portions to and among my grand-children, the children of any deceased grand-child taking deceased parents share."

This language, testator's meaning and his intention are clear. I agree with the majority that canons of construction should be resorted to only if the language of the will is ambiguous or testator's intent is uncertain. *Lewis Estate,* 407 Pa. 518, 180 A. 2d 919 (1962). Yet the majority's conclusion appears to be based upon (rather than supported by) rules of construction despite the clarity of testator's words and intention.

Furthermore, proper construction of this gift does not require the application of the presumption that an interest is vested rather than contingent. Basically, this presumption, even though a very ancient one, is itself merely a rule of construction. To counterbalance the absoluteness of the presumption of vesting the "pay and divide rule" was developed over many years. With the proper abolition of the "pay and divide rule" by Mr. Justice, now Chief Justice BELL, speaking for a unanimous Court, in *Dickson Estate,* 396 Pa. 371, 152 A. 2d 680 (1959), this counter-balancing effect was destroyed. Thus, we must now avoid routine use of the presumption of vesting as an absolute rule but must apply it as it was originally intended, as a helpful rule of construction. Application of the presumption here requires the re-opening of estates long closed with all the attending legal and practical difficulties. I fear this presumption may have unduly influenced the majority in its determination, thereby achieving the "highly improbable result" to be avoided under *Fahey Estate,* supra.

As the testator in his armchair contemplated the future and reflected upon the objects of his bounty, particularly the members of his immediate family, he was keenly aware from tragic personal experience that children may and unfortunately do predecease their

parents. In his lifetime, he and his wife endured three such unfortunate losses.[2] While he, undoubtedly, hoped and prayed that his children, as parents, would be spared such tragedies, he could not and did not ignore the teachings of his own experience.

In view of testator's personal experiences, it is difficult and almost impossible to conclude that his gift to "my grand-children, the children of any deceased grand-child taking deceased parents share" is an expression of intention that his estate eventually pass to deceased grandchildren. I can find no indication anywhere in his will or in the relevant attending circumstances to suggest that this alert, well-informed and well-advised testator, who created trusts for many years in the future for many persons, and whose obvious and primary purpose was to benefit his descendants, intended to or did direct that the ultimate distribution of trust principal devolve through short-term, intermittent estates of deceased grandchildren. This is precisely what testator sought to avoid. His constant reference throughout his will to living persons announced and repeated that he was thinking, writing and providing for living persons only.

If, as the majority concludes, testator's gift was to grandchildren without reference to survival at the time of distribution and irrespective of whether deceased grandchildren were survived by children, he could have achieved that gift by ending with the phrase "in equal portions to and among my grand-children." However, by adding "the children of any deceased grand-child taking deceased parents share," he sought to, and did, make clear that his gifts were to living persons and not to deceased grandchildren who left no children. In the case of a deceased grandchild who left children, he

[2] Daughters Cornelia Bonnell Houston and Eleanor Anne Houston died in 1857 and 1875, respectively. Henry H. Houston, Jr., died in 1879.

specifically provided a gift for such children. However, as to other deceased grandchildren—those leaving no children—the will is entirely silent. If, as the majority holds, testator intended them as beneficiaries also, is it likely that he would have said nothing about them? It is more likely that deceased grandchildren dying without children are not mentioned because testator did not intend them to benefit if they predeceased his last surviving child. Similarly, testator would not have awarded to such deceased grandchildren the same freedom to pass (by will or intestacy) the trust property as he granted to living grandchildren, a privilege not granted to deceased grandchildren leaving issue.

It seems clear to me that testator intended and his will provided that at the death of his last child, the principal should be distributed equally to his then living grandchildren, and if there were deceased grandchildren who left children, they (great-grandchildren) would take the share their parents would have taken.

In providing only for living grandchildren and the living children of deceased grandchildren, testator was carrying out his considered scheme of distribution and avoiding the incidents and consequences of almost immediate successive devolutions through estates of deceased persons. "The exclusion of estates of deceased persons is the ordinary intention of a testator."[3]

---

[3] *McCrea Estate*, 78 Pa. D. & C. 145, 151 (O.C. Philadelphia County, 1951). President Judge SINKLER continued: "This is recognized in Laughlin's Estate, 336 Pa. 529, in which the court, referring to the Act of June 29, 1923, P. L. 914, which provides that in a gift to heirs following a life estate, the heirs shall be determined as of the termination of the life estate, stated (336 Pa. at 536) :

"'. . . this Act does not apply to the interpretation of the will now in controversy, whose maker died in 1919, but it is here referred to as a legislative establishment of a statutory presumption, and it is reasonable to believe that this presumption is "a conclu-

The majority reaches its conclusion with three expressed regrets: ". . . (a) it gives a share of the principal to descendants long dead, and (b) it would permit strangers to testator's blood (a deceased grandchild's spouse, or his legatees, or his heirs under the intestate laws) to receive a substantial portion of his estate without any express gift, and (c) it greatly depletes, by colossal unforeseeable taxation, the property which the testator desired and intended to go to his descendants."

In my view, the first two majority regrets (a and b) are more than expressions of regret. I deem each to be a very persuasive factor in revealing testator's intention. Together they very strongly support the conclusion that testator created contingent and not vested gifts for his grandchildren. Each justifies and certainly both require a result contrary to that reached by the majority.

I regard the majority's tax regret as simply a regret, since it deals with tax circumstances and consequences unknown to this nineteenth century testator. However, in lieu of the majority's tax regret, it is suggested that the pyramiding of estate administration costs and expenses and the resulting diminution of assets occasioned by early and almost immediate succes-

---

sion firmly based upon the generally known results of wide human experience".' " *McCrea Estate*, supra, at 151-52.

Although the Act of 1923, or the provisions of the Wills Act of 1947, April 24, P. L. 89, §14(4), 20 P.S. §180.14(4), and the Estates Act of 1947, April 24, P. L. 100, §14(1), 20 P.S. §301.14(1), which perpetuate this provision of the 1923 Act, do not apply to the present case, they show the legislative approach to the same basic situation, a trust with remainder upon its termination to heirs, relatives, etc. This legislative mandate provides the same recognition of human experience that is appropriate to the present case, namely, that the devolution of a decedent's assets through intermittent estates, where decedent's primary object is to benefit his descendants, is an anathema.

sive administrations constitute a proper indication of testator's intention. These circumstances lend added support to the conclusion that testator's gifts of principal were to living grandchildren.

I dissent and would direct that the trust corpus be divided into nine equal shares.

Mr. Justice MUSMANNO joins in this dissenting opinion.