Hoover Estate.

Argued November 16, 1964. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Hopkin T. Rowlands,* with him *Hopkin T. Rowlands, Jr.,* for appellant.

*Arthur Silverblatt,* for appellant.

*William E. Woodside,* with him *Anthony C. Falvello, Henry A. Giuliani, Robert J. Woodside,* and *Falvello, Ustynoski, Giuliani & Bernstein,* and *Cooper & Woodside,* for appellees.

OPINION BY MR. CHIEF JUSTICE BELL, March 16, 1965:

Levan O. Hoover died January 9, 1919 leaving a will dated December 16, 1918 and a codicil dated December 31, 1918. Marion Hoover Evans, testator's last surviving child, and Norma Lee Gruver, the only child of Norman Lee Hoover who was one of testator's deceased children, each appealed from a final decree of the orphans' court which directed a *per capita* distribution of the principal of the trust estate created by the testator.

Testator pertinently provided as follows: "ELEVENTH: All the rest and residue of my property, real personal and mixed . . . I direct my Trustee to . . . pay the earnings of said trust fund or as much thereof as she may require to my wife, Mary B. Hoover, for and during her natural life, and at her death pay *to my children** the earnings of said fund, *share and share alike* as follows: Norman Lee Hoover, Reynolds Oiler Hoover, Lottie Catherine Hoover, John Graham Hoover, Levan Otto Hoover and Marion Margaret Hoover. If any of my said children above enumerated should die, leaving issue of their body, it is my wish and I direct that said issue shall take his, hers or their parents share, and if any of my said children should die *without issue* of his, hers or their bodies, I direct that the share of said deceased child or children shall go to and vest in the remaining of my children.

---

* Italics throughout, ours.

*When all of my said children except one are dead,* I direct my Trustee, to *pay to the last remaining child, and the children,* if any of my children deceased, the principal held in trust, *share and share alike,* thus ending the trust and closing the estate forever."

Testator left a wife and six children, two of whom died without issue. He had no grandchildren when he made his will or at the time of his death. Testator's widow died March 8, 1948. *Testator's last surviving child,* Marion Hoover Evans, and the following children of testator's deceased children, were living at the termination of the trust: Norma Lee Gruver, child of testator's deceased son, Norman Lee Hoover; Levan O. Hoover, III and Mary B. Davenport, children of testator's deceased son, Levan O. Hoover, Jr.; Jean H. Brandt, John O. Hoover, Doris H. Troutman and Robert S. Hoover, children of testator's deceased son, Reynolds O. Hoover.

This was *in one respect* a very unusual will, in that distribution of principal was directed—not upon the death of testator's widow, or upon the death of his last life tenant, or a per share distribution of principal upon the death of each life tenant leaving children or issue, but—upon the death of all *but one* of testator's children.

Testator's gift of the trust-principal was coupled with the words "share and share alike"—words* which have perplexed Courts for years.

Testator, in the ELEVENTH paragraph of his will, pertinently provided for (1) a per capita distribution of income to testator's children *share and share alike,*** with (2) a gift of income per stirpes to the *issue* of each deceased child and (3) with a gift over of income to his remaining children, in the event that one or

---

* like the words "equally" or "in equal shares."
** after the death of testator's wife.

more of his children died without issue. Testator demonstrated in and by the clearest language that he knew how to create a per capita distribution (of income) among his children and a per stirpes distribution (of income) among their issue when that was his intent.

There then follows the challenged sentence which mandates the distribution of principal. The question is, Did testator intend to give (1) a per capita share of the principal to his last living daughter (Marion Hoover Evans) and the children of his deceased children, share and share alike, or (2) did testator intend a per stirpes distribution of principal,* share and share alike to his last living daughter and all his grandchildren, or (3) did testator intend to give his surviving daughter a one-fourth share and the balance of principal per capita or per stirpes?

The lower Court decided that this will is sui generis and that testator intended *a per capita* distribution of the principal of the trust fund, *share and share alike,* to his last living daughter and the children of his deceased children. With this construction we agree.

In *Houston Estate,* 414 Pa. 579, 201 A. 2d 592, the Court, quoting from prior decisions, said (page 586-587) : ". . .' " It is now hornbook law (1) that the testator's intent is the polestar and must prevail; and (2) that his intent must be gathered from a consideration of (a) all the language contained in the four corners of his will and (b) his scheme of distribution and (c) the circumstances surrounding him at the time he made his will and (d) the existing facts; and (3)

---

* Marion Hoover Evans and Norma Lee Gruver contend that the distribution should be per stirpes as follows: Marion Hoover Evans, 1/4th; Norma Lee Gruver, 1/4th; Mary B. Davenport, 1/8th; Levan O. Hoover, Jr., 1/8th; Jean H. Brandt, 1/16th; Doris H. Troutman, 1/16th; John O. Hoover, 1/16th; Robert S. Hoover, 1/16th.

that technical rules or canons of construction should be resorted to only if the language of the will is ambiguous or conflicting, or the testator's intent is for any reason uncertain: Dinkey Estate, 403 Pa. 179, 168 A. 2d 337; Pruner Estate, 400 Pa. 629, 162 A. 2d 626; Wanamaker Estate, 399 Pa. 274, 159 A. 2d 201; Hope Estate, 398 Pa. 470, 159 A. 2d 197." '

". . . ' " it is not what the Court thinks he might or would or should have said in the existing circumstances, or even what the Court thinks he meant to say, but what is the meaning of his words. Kelsey Estate, 393 Pa. 513, 143 A. 2d 42; Britt Estate, 369 Pa. 450, 87 A. 2d 243; Sowers Estate, 383 Pa. 566, 119 A. 2d 60; Cannistra Estate, 384 Pa. 605, 121 A. 2d 157.' Saunders Estate, 393 Pa. 527, 143 A. 2d 367. See to the same effect Althouse Estate, 404 Pa. 412, 172 A. 2d 146. . . .": Woodward Estate, 407 Pa. 638, 640, 182 A. 2d 732.' "

The words which give rise to this controversy, viz., "share and share alike," may mean, *depending upon the language of the will,* equality among the designated beneficiaries in the same generation or class, but the ordinary and prima facie meaning of this phrase is equality among *all* the designated beneficiaries. Cf. *England Estate,* 414 Pa. 115, 200 A. 2d 897; *Burleigh Estate,* 405 Pa. 373, 175 A. 2d 838; *Love Estate,* 362 Pa. 105, 66 A. 2d 238; *Ashburner's Estate,* 159 Pa. 545, 28 Atl. 361.

We have read and reread Hoover's will many times, and we are convinced that his intention and the meaning of his language was to give his trust principal per capita, i.e., in equal shares—share and share alike— to his last remaining child and the children of his deceased children.

Appellants point out that testator intended his children to share equally the income of the trust, and that the decision of the lower Court ordains a dif-

ferent scheme for distribution of principal. That is exactly what he clearly said he wanted—he wanted only his last remaining child to have any share of principal. So far as inequality of principal is concerned, testator himself created an inequality among his children. See *Henderson Estate*, 405 Pa. 451, 455, 176 A. 2d 428.

Appellants further contend that a per capita distribution of principal to his last living child and an unforeseeable number of his grandchildren is so unfair to his last living child as to be unreasonable and improbable and therefore unsupportable. They argue that a per capita distribution of principal among his child and possibly two or twenty grandchildren would be absurd, and consequently a per stirpes distribution must have been intended. They further contend that *even under the existing circumstances* such a per capita construction would be unfair to testator's last living child and therefore erroneous, since (a) her income would be reduced and (b) she would be placed on a basis of equality with his grandchildren who were unborn at his death, and (c) that was an entirely different scheme from his gift of income and therefore unreasonable and unthinkable. However, a per capita distribution of principal to his last living child and the children of his deceased children is exactly what testator said he wished and intended to make. He certainly clearly intended his last remaining child to have and receive (after the death of all his other children) a large benefit which none of his other children received, viz., principal instead of income. Moreover, testator might reasonably have believed that his last living daughter would prefer at her advanced age to have a share of principal with which she could buy many things she desired, even though it meant a decrease in her income. In any event we cannot rewrite Hoover's will in order to attain what some believe is a fairer and wiser distribution of his property.

We deem it unnecessary to discuss the many cases cited by appellants and by appellee construing the words "share and share alike," some of which support a per capita distribution and some a per stirpes distribution. The language in each and all of those wills is so different from Hoover's language as to furnish no controlling precedent.

Decree affirmed; each party to pay own costs.

Mr. Justice JONES dissents.