## Logan Estate

*Victor R. Beiber*, for accountant.

*Cahill, Cahill & Lynch, Robert T. Lynch, Austin J. McCreal,* and *Rodney T. Bonsall*, for claimants.

SHOYER, J., March 26, 1968.—Testator, Algernon Sydney Logan, who died December 11, 1925, left a holographic will dated March 7, 1922, and a holographic codicil dated March 17, 1924, . . . whereby, in item VIII, as amended by the codicil, he gave his trustee specified bonds having an aggregate face value of $80,000 to pay the net income therefrom to Elizabeth A. Keucher for life, and, after her death, gave the remainder to the Old Man's Home, Thirty-ninth Street and Powelton Avenue, Philadelphia . . .

This account was filed because Elizabeth A. Keucher died on November 30, 1966. . .

The only question remaining which requires adjudication arises out of the fact that this trust has increased in value from $80,000 to approximately $110,000. Is the Old Man's Home, the *remainderman*

specified in item VIII of the will, entitled to this entire trust fund, or only to its original value of $80,000, with the accretion then payable to the *residuary legatees?*

In item XV of his will, testator gave the residuary estate, one half outright to his widow, Mary W. Logan, and the other one half to his son, Robert R. Logan, for life, with remainder to the American Anti-Vivisection Society.

Mary W. Logan, widow of testator, died February 4, 1933, leaving a will upon which letters testamentary were granted here. She bequeathed her entire estate to her son, Robert R. Logan.

Robert R. Logan died June 17, 1966, leaving a will which was probated at Doylestown, Pa. . . .

In the notice to the parties in interest and in the statement of proposed distribution, the accountant has taken the position that the *entire* trust fund is distributable to the Old Man's Home, the remainderman specified in item VIII.

The residuary legatees claim that the portion of the fund in excess of $80,000 belongs to them.

Counsel for the accountant, in his very able brief in support of the accountant's position, points out that the bequest in item VIII of the bonds there enumerated having a face value of $80,000 to his trustee, provides: *"In Trust nevertheless,* as a specified bequest, for purposes to be hereinafter declared" to pay over to Elizabeth A. Keucher the "whole of the semiannual interest accruing from the eighty thousand dollars ($80,000.00) in Bonds just specifically enumerated during the full term of her natural life, after deducting the annual Taxes and also the customary commissions due to the said Company as Trustee".

Further on in the same paragraph, he provided that "the whole Trust fund herein created shall be free of all Inheritance Taxes, both State and Federal, the same to be paid out of my general Estate".

And, still further on in the paragraph, he provided for the reinvestment of principal in "securities *strictly legal for Trust funds*". And "after the death of the said Elsbeth A. Keucher, I give and bequeath the whole herein specified amount of Eighty thousand dollars ($80,000.00) in Bonds to the *Old Man's Home*, at present situated at 39th and Baring Streets, Philadelphia, absolutely, for the sole use and benefit of that Institution. . ."

The account shows that all of the bonds itemized in item VIII, as modified by the codicil, were sold during the administration of the trust. The proceeds were reinvested and now reflect an appreciation of more than $32,000 in the principal.

In Moltrup Estate, 424 Pa. 161, the court stated, pp. 165-67:

"It has long been the well established law in Pennsylvania that a testator's intent is the polestar in interpreting a will.

"In Hoover Estate, 417 Pa. 263, 207 A. 2d 840, the Court said (pp. 266-267): 'In Houston Estate, 414 Pa. 579, 201 A. 2d 592, the Court, quoting from prior decisions, said (pages 586-587): ". . . It is now hornbook law (1) that the testator's intent is the polestar and must prevail; and (2) that his intent must be gathered from a consideration of (a) all the language contained in the four corners of his will and (b) his scheme of distribution and (c) the circumstances surrounding him at the time he made his will and (d) the existing facts; and (3) that technical rules or canons of construction should be resorted to only if the language of the will is ambiguous or conflicting, or the testator's intent is for any reason uncertain: Dinkey Estate, 403 Pa. 179, 168 A. 2d 337; Pruner Estate, 400 Pa. 629, 162 A. 2d 626; Wanamaker Estate, 399 Pa. 274, 159 A. 2d 201; Hope Estate, 398 Pa. 470, 159 A. 2d 197 . . ." ' "

Counsel for the accountant and for the home contend that testator created a "fund" composed of specified bonds which testator recognized could be sold by the trustee. He specifically provided that "the whole Trust fund herein created shall be free of all Inheritance Taxes . . ." And, after the death of the life tenant, he gave "the whole herein specified amount of eighty thousand dollars ($80,000.00) in Bonds to the Old Man's Home . . ."

Counsel for the accountant points out in his memorandum of law that the Old Man's Home is the devisee of the remainder in item VII which precedes, and in item IX which follows the bequest here in issue. The fact that these contiguous clauses unquestionably dispose of the entire remainder to the Old Man's Home lends further weight to the conclusion that testator intended in item VIII to give this home the entire *remainder of that fund.* Furthermore, these three clauses demonstrate that the Old Man's Home was testator's favorite charity while the Antivivisection Society, of which the son was president, as recited in the residuary clause, was the son's favorite charity.

Boyer's Estate, 174 Pa. 16 (1896), is cited on behalf of the Old Man's Home in support of its claim. . .

Where testator has obviously been thinking of the res of the trust as a *fund,* subject to increase or decrease in the hands of the trustee, it follows that his intention must be to dispose of the remainder with all possible accretions as an entity, not as a pecuniary legacy. Whether the fund be smaller or larger than the sum originally set aside, he is thinking of it as a *unit,* and directing its distribution as such. Where testator carves two or more pecuniary legacies out of the remainder, his intention becomes less clear, and the claims of the residuary legatees or intestate heirs grow proportionately stronger.

We are convinced by the portions of the will to which we have made specific reference, that this testator repeatedly designated this fund as "Eighty thousand dollars ($80,000.00) in Bonds" to clearly identify the 80 separate component parts which, in the aggregate, made up the whole. Since the bonds were kept "locked up (partly in my larger box and partly in my smaller box)", he listed all 80 serial numbers of the five issuing corporations and detailed which bonds were "in a round roll" and which were "in two envelopes". Such itemization was surely for the purpose of identifying all 80 bonds and balancing their total value at $80,000, not for the purpose of separating them, but in order to account for them as a *fund.* Once identified and gathered together, his trustee was to treat them thereafter as *one fund* . . . . .

The residuary legatees cite Johnson Estate, 80 D. & C. 23 (adjudication of Lefever, J.), in support of their claim. However, Johnson Estate is inapposite; it is readily distinguishable on its facts . . .

In view of the foregoing, I find as a fact that testator intended to and in item VIII of his will he effectively gave the *entire* remainder of the $80,000 trust fund to the Old Man's Home, absolutely, subject to the condition that a plaque be erected in memory of John Wister.

I further find that the plaque has been erected in performance of the condition imposed by testator.

There was no objection to the account which shows a balance of principal of $111,610.62, which, composed as indicated in the account, is awarded to the Old Man's Home of Philadelphia . . .

And now, March 26, 1968, the account is confirmed nisi.