**Neafie Estate**

*John F. Meigs* and *William H. S. Wells,* of *Saul, Ewing, Remick & Saul,* for accountant.

*William Carson Bodine* and *Paul Maloney,* for descendants of testator's daughter.

*Jerome B. Apfel,* of *Blank, Rome, Klaus & Comisky,* for descendants of testator's brother.

*Norman E. Donoghue, II,* and *Linda A. Fisher,* of *Dechert, Price & Rhoads,* for descendants of testator's sister.

*Nancy Rothkopf,* for Commonwealth.

KLEIN, *A.J.*, June 21, 1976—Jacob G. Neafie, the testator, died January 16, 1898, leaving a will dated December 18, 1891, which was duly probated January 27, 1898.

By decree of this court dated May 10, 1902, Land Title and Trust Company (now Provident National Bank) was appointed substituted trustee.

The present fund was awarded to the accountant by adjudication of Hunter, J., dated April 25, 1955.

The reason for filing the present account was the expiration on May 11, 1973, of a period of 21 years after the death of Anna Whitaker Mitchell, testator's last surviving grandchild living at the time of his death, and the resulting termination of the trust.

Testator provided that after the death of his wife, Mary A. Neafie (who died January 22, 1910), and his daughter, Mary E. Whitaker (who died January 16, 1916) and after the payment of certain charitable legacies, the balance of the estate be held in trust for:

". . . any child or children which my said daughter, Mary E. Whitaker, may leave her surviving, and who shall have been living at the date of my decease, for and during all the term of his, her or their natural lives, share and share alike, and for the period of twenty-one (21) years after the death of the last surviving of my said wife, Mary A. Neafie, my said daughter, Mary E. Whitaker, and her children who shall be living at the time of my decease; and during said period all of her children, if my said daughter, Mary E. Whitaker, shall be deceased, shall be entitled to share in said income from my estate. And, if any of my said grandchildren shall die within said period leaving issue to survive him or her, the share of said income to

which said grandchild was entitled shall be paid to said issue; . . .

". . .

"And from and immediately after the decease of my said wife, Mary A. Neafie, and my said daughter, Mary E. Whitaker, and the last survivor of my grandchildren, who may have been living at the time of my decease, and after the expiration of the further period of twenty-one (21) years, I order and direct that all of my said residuary estate, real and personal, shall be converted into cash by my Executors hereinafter named, or the survivor of them, and the net proceeds thereof, after deducting all necessary and legal charges, commissions and expenses therefor, to be divided among such of the descendants of my daughter, Mary E. Whitaker, my sister, Catharine Teese, and my brother, Abraham Neafie, as may be living at the time of this distribution, share and share alike."

Counsel for the parties in interest filed a stipulation that the "Neafie Family Tree" attached thereto "is true and correct as to the dates of birth and death of all persons named thereon whose date of birth or death, or both, is indicated under his or her name." A study of the family tree discloses that on May 11, 1973, the date upon which the trust terminated, the following descendants of Mary E. Whitaker, Abraham Neafie and Catharine Teese were living:

(a) *Mary E. Whitaker* (seven descendants)

A great-great-grandson, J. G. Neafie Mitchell, Jr., and his four children, Charles E. S. Mitchell, Patricia Ann Mitchell Fegley, Christine Jane Mitchell Fox and Susan K. Mitchell, all of whom are of age. Charles E. S. Mitchell has two children, Jacob Neafie Mitchell, II, and Caroline Ruth Mitchell, who are minors.

(b) *Abraham Neafie* (nine descendants)

A great-granddaughter, Evelyn C. Sutphen Aines, and her two sons, Philip Deane Aines, Jr., and Donald Sutphen Aines. Philip has two children, Christine Alice Aines and Roger Deane Aines. Donald has four children, Deane Gary Aines, Glen Eric Aines, Donald Sutphen Aines, Jr., and Paul Alexander Aines. All of these are of age except Paul Alexander Aines who was born August 14, 1958 and will come of age in less than two months.

(c) *Catharine Teese* (fourteen descendants)

Three great-grandchildren, Frances Dolores Tees Tatum Boyington, T. Howard Tees, Jr., and Zoraida Mea Tees Hauch; Candice Gregg Boyington, an adopted daughter of Frances; and Lillian Zoraida Evans, Helen Dolores Tees Ferrell, Theodore Norman Tees, Katherine Elizabeth Tees Frame and Christine Joy Tees Taylor, children of J. Howard Tees, Jr. Lillian Zoraida Evans has one daughter, Dolores Zoraida Phoenix; Helen has two minor children, Zoraida Ferrell and Michael Ferrell; and Katherine has two minor children, Aaron L. Frame and Tara E. Frame.

All parties in interest are stated to have had notice of this audit.

As indicated above, there are minors who have a present interest in the distribution of the principal of the trust. It is clear, however, that there are adult beneficiaries who have had notice of the audit and have similar interests. Accordingly, the court, in the exercise of its discretion under sections 7183(2) and 3504 of the Probate, Estates and Fiduciaries Code of June 30, 1972, P. L. 508 (No. 164), 20 P.S. §§7183 and 3504, has waived the appointment of a guardian ad litem.

No Pennsylvania inheritance tax appears to have been paid during the period covered by this account. Ms. Rothkopf appeared for the Commonwealth, claiming such inheritance tax as may be due and assessed, without prejudice to the right of the Commonwealth to pass on debts and deductions, and the awards will be made subject to that claim.

The accountant has presented the following three questions to the auditing judge for determination:

1. Is the principal to be divided initially into three separate shares for the descendants of Mary E. Whitaker, Catharine Tees (Teese) and Abraham Neafie? The accountant's position is that the fund is not to be so divided.

2. Are all of the living descendants of Mary E. Whitaker, Catharing Tees (Teese), and Abraham Neafie, regardless of the difference in generations, entitled to share equally? The accountant takes the position that all living descendants are entitled to share in the fund equally.

3. Do all parties entitled to distribution share per capita or is the per capita division restricted to the oldest generation with a per stirpes distribution thereafter? The accountant's position is that distribution is per capita and not per stirpes, without regard to multiple generations.

Naturally, as can be expected, counsel for members of each stirp contend for an interpretation that is most favorable financially for their clients.

Counsel for the descendants of testator's daughter, Mary E. Whitaker, contend that the entire principal should be awarded to J. G. Neafie Mitchell, Jr., testator's great-great-grandson, who was the recipient of all of the income prior to the termi-

nation of the trust, or, in the alternative, that the fund be divided into three equal shares to be distributed per stirpes in each group.

Counsel for the descendants of Abraham Neafie, testator's brother, maintain that a stirpital distribution into three equal shares should be made as of May 11, 1973, to the then living descendants of Mary E. Whitaker, Catharine Teese and Abraham Neafie. There being nine persons in the stirp of Abraham Neafie, the result would be that each would receive one twenty-seventh of the fund.

Counsel for the descendants of Catharine Teese, being the most numerous, agree with the accountant that each of the 30 living descendants of the three designated persons should receive an equal one-thirtieth share of the fund.

The auditing judge has concluded that the construction suggested by the accountant is clearly correct and that distribution of the residue should be made per capita in equal shares to the 30 descendants of Mary E. Whitaker, Catharine Teese and Abraham Neafie, including Candice Gregg Boyington, the adopted daughter of Frances Dolores Tees Tatum Boyington.

It is axiomatic that testator's intent is the polestar and must prevail unless unlawful. This intent must be gathered from a consideration of all language contained in the will, the scheme of distribution, the circumstances surrounding testator at the time the will was made and the existing facts. It is equally basic that technical rules or canons of construction will be resorted to only if the language of the will is ambiguous or conflicting or testator's intent is, for any reason, uncer-

tain: Horvath Estate, 446 Pa. 484, 282 A. 2d 725 (1972); Lilley Estate, 443 Pa. 1, 275 A. 2d 37 (1971); Jessup Estate, 441 Pa. 365, 276 A. 2d 499 (1970); Matthews Estate, 439 Pa. 69, 269 A. 2d 714 (1970); Carter Estate, 435 Pa. 492, 257 A. 2d 843 (1969); Houston Estate, 414 Pa. 579, 201 A. 2d 592 (1964); Lewis Estate, 407 Pa. 518, 180 A. 2d 919 (1962); Burleigh Estate, 405 Pa. 373, 175 A. 2d 838 (1961); Dinkey Estate, 403 Pa. 179, 168 A. 2d 337 (1961); and Hope Estate, 398 Pa. 470, 159 A. 2d 197 (1960).

In our opinion, testator's language disposing of the principal of the trust is clear, unequivocal and free from doubt or uncertainty. He directed that the trust should continue for the period of 21 years after the death of the last survivor of his wife, his daughter, Mary, and Mary's children who shall be living at the time of his death. Upon the termination of the trust he provided that his estate be converted into cash and the proceeds "be divided among such of the descendants of my daughter, Mary E. Whitaker, my sister, Catharine Teese, and my brother, Abraham Neafie, as may be living at the time of this distribution, share and share alike."

Counsel for J. G. Neafie Mitchell, Jr., testator's great-great-grandson and closest relative, who has been receiving the entire income from the trust since his grandmother's death in 1952, contends that he is entitled to the entire principal. It is their contention that the word "descendants" refers only to testator's daughter, Mary, and not to his brother or sister. They suggest the will provided that upon the termination of the trust the principal is:

"to be divided among such of

"(a) the descendants of my daughter, Mary E. Whitaker,

"(b) my sister, Catharine Teese, and

"(c) my brother, Abraham Neafie, as may be living at the time of this distribution, share and share alike."

Since decedent's brother and sister were deceased at the termination of the trust, under their reading the entire principal would go to the great-great-grandson.

We cannot accept this strained construction of testator's clear language.

According to the family tree approved by counsel for the parties in interest, testator was born in 1816 and was 82 years of age when he died in 1898. His will is a carefully drawn instrument, obviously prepared by a competent attorney. It is also clear that testator intended to keep the trust alive for the maximum period permitted by law. We do not know when his sister, Catharine, was born, but the family tree reveals that his brother Abraham was born in 1832; hence, he was 66 years old when testator died. The trust was to continue for the lives of testator's wife, his daughter, Mary, his grandchildren living when he died, and 21 years thereafter. In other words, the trust was to continue for three generations plus 21 years. As a matter of fact, the trust terminated in 1973, 75 years after testator died. At that time, Abraham, if living, would have been 141 years of age. It taxes credulity to believe that testator thought that his brother and sister could possibly be alive at the time when this trust would terminate in the distant future. It seems evident that he intended the descendants of not only his daughter but also those

of his brother and sister to participate in the final distribution of principal.

Not a single one of the 30 living descendants who will participate in the distribution was living when testator died. He could not have been interested personally in any individual, because they were all unknown to him. In fact, J. G. Neafie Mitchell, Jr., the last income beneficiary, was not born until 1919, 21 years after testator died.

An examination of this will from its four corners discloses that testator, in addition to making provisions for his daughter, Mary, and her issue, also had a real concern for his sister, Catharine, and her daughters, and his brother, Abraham, and his children. He set up a trust fund of $50,000 for Mary and gave her the free use and occupancy for life of premises 2102 North Broad Street, which he owned and in which she was residing. He set up a trust fund of $25,000 for his sister, Catharine, and her two daughters, Emma and Clara. He also gave Catharine the free use and occupancy for life of premises 1122 Hanover Street, which he owned and in which she was residing. He also provided for the free use and occupancy of premises 1105 East Montgomery Avenue, which he owned, for the joint lives or the life of the survivor of Catharine's two daughters. He also set up a trust fund of $20,000 for his brother, Abraham, and his children.

These provisions for the benefit of Catharine and Abraham and their children indicate that the Neafie family was a closely knit one and that testator had a deep interest in his brother and sister and their progeny. The provisions for them strongly support the conclusion that he was interested, not only in his own descendants, but also

in the descendants of Abraham and Catharine and that the clear language he used in disposing of his residuary estate was done knowingly and intentionally so that all of his descendants and the descendants of his two siblings would share pari passu in the ultimate distribution of principal which, in the normal course of events, would occur many decades after his death and the deaths of his brother and sister.

One of the arguments made by counsel for J. G. Neafie Mitchell, Jr., is that, since he was receiving all of the income when the trust terminated, he should likewise receive all of the principal. There is no merit to this contention. Nothing is contained in this will which even remotely suggests that the great-great-grandson should receive the principal of the estate merely because he was receiving the income. On the contrary, testator's directions with respect to the distribution of the residue are clear and unequivocal.

The plain meaning of the testamentary direction to convert the residue into cash and to divide it "among . . . descendants . . . share and share alike," is that every descendant is to receive an equal per capita share, regardless of his or her family line and regardless of the existence of a living parent who is also a descendant and who will concurrently share. This was the law in 1891 when the will was made; it was the law in 1898 when testator died and it is the law today. An examination of the language of testator's will as well as the scheme of distribution of his estate and the circumstances existing at the time of his death clearly indicates that he intended a per capita distribution among all of the distributees: Hamilton

Estate, 454 Pa. 495, 312 A. 2d 373 (1973); Hoover Estate, 417 Pa. 263, 207 A. 2d 840 (1965); Restatement, Property, §303 (Comment i).

The presumption recognized in Hoover Estate and Hamilton Estate that the words "share and share alike" require each beneficiary to receive an equal share follows precedents that were clearly established at the time testator wrote his will and when he died. See, for example: Dible's Estate, 81 Pa. 279 (1875), and Brundage's Estate, 36 Pa. Superior Ct. 211 (1908), where testator in each case used the words "share and share alike" and the court directed per capita distribution.

We should also point out that the dispositive provisions of the will show that testator knew how to make a stirpital gift when he so desired. Had he intended to distribute the principal of his residuary estate on a stirpital basis he could readily have done so. Instead, he very clearly directed that the residue be distributed "among the descendants . . . share and share alike," and there is no evidence of any kind in the language he used that a stirpital distribution was intended. See Bache Estate, 43 D. & C. 2d 780, 785 (1968), where the court said:

"Since it is obvious that he knew how to make a stirpital gift when he so intended, we must assume that he intended this gift to be per capita and thus give effect to the plain language used by him."

We, therefore, conclude that testator intended a per capita distribution and that intention will be reflected in the awards herein.

Frances Dolores Tees Tatum Boyington, a great-granddaughter of testator's sister, Catharine

Tees(e), adopted Candice Gregg Boyington, a minor, who was born March 7, 1958, by decree entered in the Corporation Court of the City of Alexandria, Virginia (In Chancery No. 12752), on August 16, 1968. One of the questions posed in the statement of proposed distribution is whether this adopted child is included as a descendant of Catharine Teese. We have stated hereinbefore that we thought she was so included. Prior to Tafel Estate, 449 Pa. 442, 296 A. 2d 797 (1972), we would have held that this adopted child was excluded from participating in this distribution. However, Tafel changed the rule in this State. Since the adopted child was a minor ten years of age when she was adopted, and since there is no indication in the will that testator did not intend to treat adopted children in the same manner as natural children, we conclude that an adopted child is included in the testamentary word "descendants" regardless of the date of the adoption.

A waiver of an income accounting up to March 25, 1973, on which date the last periodic income statement was rendered has been submitted and is annexed.

There was no objection to the account which shows a balance of principal before distributions of

$525,122.39

and a balance of income before distributions of

21,506.70

making a total of

$546,629.09

less additional administration costs itemized on counsel's appearance slip, consisting of:

| | | |
|---|---|---|
| Expenses of witnesses | $1,000.00 | |
| Fee paid to genealogist | 2,820.00 | 3,820.00 |

leaving a balance of                  $542,809.09
from which the income accrued to May 11, 1973, is awarded to J. G. Neafie Mitchell, Jr., and the balance, together with any further income to time of actual distribution, is awarded in equal one-thirtieth shares to J. G. Neafie Mitchell, Jr., Charles E. S. Mitchell, Jacob Neafie Mitchell, II, Caroline Ruth Mitchell, Patricia Ann Mitchell, Christine Jane Mitchell Fox, Susan K. Mitchell, Evelyn S. Aines, Philip Deane Aines, Jr., Christine Alice Aines, Roger Deane Aines, Donald Sutphen Aines, Deane Gary Aines, Glen Eric Aines, Donald Sutphen Aines, Jr., Paul Alexander Aines, T. Howart Tees, Jr., Lillian Zoraida Evans, Dolores Zoraida Evans, Helen Dolores Tees Ferrell, Zoraida Ferrell, Michael Ferrell, Theodore Norman Tees, Katherine Elizabeth Tees Frame, Aaron L. Frame, Tara E. Frame, Christine Joy Tees Taylor, Zoraida Mea Tees Hauch, Frances Dolores Tees Tatum Boyington, and Candice Gregg Boyington.

The accountant has requested that the shares distributable to minors be placed in savings accounts to be paid to each minor upon majority or upon further order of this court. Because the sum each minor will receive is substantial and because they do not all reside in this jurisdiction, the auditing judge has concluded, and so directs, that the shares of the distributees who are minors be paid to guardians of their estates when duly appointed and qualified.

The above awards are made subject to distribu-

tions already heretofore properly made and subject, further, to payment to the Commonwealth of Pennsylvania of such additional inheritance tax as may be found to be due, if any, as the same may be duly appraised and assessed, without prejudice to the right of the Commonwealth to pass on debts and deductions.

Leave is granted to the accountant to make all transfers and assignments necessary to effect distribution in accordance with this adjudication.

A schedule of distribution, duly certified by counsel to be correct and in conformity with this adjudication and, if distribution is to be made in kind, approved by all parties in interest, shall within 90 days after the absolute confirmation of this account be submitted to the auditing judge. The schedule, when approved and annexed hereto, will form part hereof.

And now, June 21, 1976, the account is confirmed nisi.